[No. 38176. Department Two. September 15, 1966.]

DONALD D. FLEMING, *as Guardian, Appellant,* v. MARY L. SMITH, *Respondent.**

*Donald D. Fleming,* for appellant.

*Bateman, Reed, McClure & Moceri,* for respondent.

WEAVER, J.—This is an action brought by a guardian ad litem on behalf of Michael Allan Smith, a minor, whom we hereafter designate as plaintiff, to obtain the proceeds of a National Service Life Insurance policy upon the life

*Reported in 418 P.2d 147.

of his deceased father, Norton Smith. The policy had been acquired by the father prior to his marriage. Defendant, mother of the insured decedent and grandmother of plaintiff, was, at all times, designated as the beneficiary in the National Service Life Insurance policy upon the life of her son.

Plaintiff's claim is based upon the contentions that plaintiff's father (a) had manifested an intention to name plaintiff as beneficiary of the policy; (b) had entered into a property settlement agreement with his wife to maintain the policy and name plaintiff as beneficiary during his minority; (c) had been ordered so to do by a decree of divorce; and (d) performed an affirmative overt act toward accomplishing the change of beneficiary.

Upon the death of Norton Smith, defendant made claim for the insurance proceeds, and, there being no conflicting claim filed with the Veterans' Administration, received the policy proceeds from the United States.

In a prior proceeding we reversed a summary judgment in plaintiff's favor and remanded the case for trial. *Fleming v. Smith*, 64 Wn.2d 181, 390 P.2d 990 (1964).

The facts are relatively simple, and, for the most part, undisputed.

Norton and Dorllyne Smith were married in New Mexico on December 7, 1957. Twenty-three days later Norton filed for divorce in the King County Superior Court. His divorce complaint alleged that a child would be born to his wife sometime in July, 1958 and stated his willingness to pay support for such child. (64 Wn.2d 181, 182). On July 1, 1958 the child, Michael Allan Smith, was born.

Although the divorce action was commenced December 30, 1957, it was not until May 5, 1959 that Norton signed a property settlement agreement with his wife. She had signed in Texas, where she was then residing, on March 3, 1959.

In brief, the agreement gave Dorllyne custody of plaintiff with reasonable visitation rights to her husband. Norton agreed to pay certain expenses and monthly payments for the support of the child. Although it appears from the

record that Norton's life was insured by other life insurance policies made payable to his mother prior to his marriage, the property agreement mentions only his National Service Life Insurance policy in which plaintiff was to be designated as beneficiary until his majority, the insured to maintain the policy free from encumbrances.

On June 12, 1959, Norton Smith obtained a decree of divorce. His wife did not appear but was represented by counsel. The terms of the property settlement agreement were stipulated into the record and, for the most part, set forth in the decree of divorce. That portion of the decree dealing with the National Service Life Insurance policy appears verbatim in our former opinion (64 Wn.2d 181, 182); it is not necessary to repeat it in this opinion.

Smith concededly knew that it was necessary to take some affirmative action in order to change the beneficiary to comply with the provisions of the divorce decree. He did not, however, request or direct the Veterans' Administration to change the beneficiary, even though he maintained the policy in force until the time of his death on November 5, 1961.[1] Plaintiff does not contend that the Veterans' Administration lacked authority to pay the proceeds to the mother.

As to the summary judgment, this court observed:

the record is devoid of any evidence that he [Norton Smith] made the slightest effort to change the beneficiary of his National Service Life Insurance policy to name his son. *Fleming v. Smith,* 64 Wn.2d 181, at 182.

The summary judgment in plaintiff's favor having been reversed, the court found after trial that

no evidence whatsoever was introduced indicating that he, the said Norton M. Smith, made even the slightest effort to change the beneficiary of the aforesaid National Service Life Insurance policy to name his son . . .

---

[1] At all times prior to his death, including the period of his marriage, Norton Smith maintained his place of residence with his mother, who was not in good health. He contributed substantially to her support. The mother had been divorced several years prior to Norton's death and received little or no financial assistance from her former husband.

as the beneficiary thereof; and the said Norton M. Smith made no overt act of any nature attempting to change the beneficiary, and there is no proof of any affirmative act whatsoever performed towards accomplishing the change of beneficiary on said policy.

Plaintiff appeals from a judgment dismissing his action with prejudice.

## I.

At the outset, we are confronted with defendant's motion to dismiss for want of jurisdiction of the state court over the subject matter of the action.[2]

The motion raises the following question:

If the proceeds of a National Service Life Insurance policy have been paid to the designated beneficiary, may a state court take jurisdiction of an action by a putative beneficiary (who has not filed a claim with the Veterans' Administration) to acquire the proceeds against the beneficiary to whom the proceeds of the policy have been paid?

It is beyond dispute that if, before payment, there are contesting claims to the proceeds of a National Service Life Insurance policy, the sole jurisdiction to determine who is entitled thereto is, by Congressional enactment, vested solely in the Veterans' Administration and the federal courts. 38 U.S.C. § 211, § 784(a) and § 785; *Gambill v. United States*, 102 F.2d 667 (10th Cir. 1939).

Our conclusion that we have jurisdiction of the instant action is based upon the federal court decisions *refusing* jurisdiction in similar circumstances, and the decisions of state courts assuming jurisdiction.

 In 38 U.S.C. § 784 suit in federal court is authorized only "in the event of disagreement as to claim . . . ." A "disagreement" arises only when a claim has been properly filed with and rejected by the Veterans' Administration. *Leyerly v. United States*, 162 F.2d 79 (10th Cir. 1947); *United States v. Christensen*, 207 F.2d 757 (10th Cir. 1953). In the instant case, plaintiff did not file a claim on the

---

[2]This motion was argued on a Motion Day but was "Passed to the Merits."

policy. There was nothing for the Veterans' Administration to reject. There not being a rejected claim, there is no "disagreement." Without a "disagreement" the federal court is without jurisdiction to hear the case.

When the gravamen of an action concerning a National Service Life Insurance policy is a controversy between private litigants, whether the theory of recovery be that of a constructive trust or breach of contract, it is not a claim against the United States, and the federal court is without jurisdiction.

In *Kaske v. Rothert,* 133 F. Supp. 427 (1955), the surviving widow and children of the insured brought an action against the named beneficiary to recover the proceeds of a National Service Life Insurance policy. Decedent had entered into a property settlement agreement in which he agreed to name his children as beneficiaries of the policy. The agreement was incorporated in a subsequently granted interlocutory divorce decree. He died prior to the entry of a final decree of divorce. At the time of the insured's death, the designated beneficiary was defendant, who had been designated before the property settlement agreement. Because the United States was not named as a party to the action and because there was no diversity of citizenship, the suit was dismissed for want of jurisdiction. In dismissing the suit, the court stated:

> It does not necessarily follow that the *plaintiffs* are not entitled to assert an interest in the proceeds of the policy, but *to receive* such *relief* they *must look to the state courts.* 133 F. Supp. 427 at 429. (Italics ours.)

In *Pack v. United States,* 176 F.2d 770 (9th Cir. 1949), the widow sued the government and the beneficiary (decedent's mother), claiming a right to the proceeds of a National Service Life Insurance policy based upon her alleged community property interest therein. The court concluded that "there was no jurisdiction to determine whether the proceeds, once received, should be held under some kind of a trust." 176 F.2d 770 at 772. The court said:

> This claim of the wife, if it exists, is not a claim against the United States. It is, at most, a claim against proceeds

which may be received by the mother and can only be litigated between wife and mother in a separate action. 176 F.2d 770 at 772.

In *Tohulka v. United States,* 204 F.2d 414 (7th Cir. 1953), the designated beneficiary (decedent's sister) commenced receiving payments from the Veterans' Administration after the insured died. Other brothers and sisters instituted suit against the United States in federal court to have a trust imposed upon any money which the beneficiary might obtain from the policy. Plaintiffs alleged that the insured had directed the defendant-beneficiary to distribute the proceeds equally among the brothers and sisters. The controversy was held to be solely between private parties concerning transactions between themselves. The federal court dismissed the suit for want of jurisdiction since the private controversy was held not to involve the government.

*Williams v. Williams,* 255 N.C. 315, 121 S.E.2d 536 (1961), and *Kauffman v. Kauffman,* 93 Cal. App. 2d 808, 210 P.2d 29 (1949), illustrate situations involving National Service Life Insurance policies and proceeds over which state courts exercised jurisdiction.

Defendant's motion to dismiss for want of jurisdiction is not well-taken.

## II.

The record contains many letters written by Norton to Dorllyne Smith, both before and after the divorce. He expressed great affection for and manifested a deep sense of responsibility toward his son, the plaintiff. The record would also support the conclusion that Norton had hopes of remarrying Dorllyne.

On at least three occasions Norton Smith mentioned insurance in his correspondence. Two references are to medical insurance; the other refers to an endowment policy he had just purchased. The record is barren of any reference to his National Service Life Insurance policy except as set forth in the property settlement agreement and decree of divorce.

In our former opinion the court discussed the re-

quirements necessary to accomplish a change of beneficiary of a National Service Life Insurance policy. The court said:

There is no difference of opinion in the decisions as to the first requirement to evidence a change of beneficiary, that is, that the insured must have a manifest *intent* to change the beneficiary. The split of authority seems to be over what actual act, if any, must be coupled with a showing of intent before the courts will treat the change of beneficiary as having been accomplished. The stricter view is that the insured must have done everything reasonably within his power to accomplish his purpose before the court will give effect to his intent.

The so-called "liberal rule," although allowing a change on proof of intent, still seems *to require a showing of some act by which the intention is manifest.* In other words, a showing of intent alone, without proof of some affirmative act performed toward accomplishing the change, is not enough. The cases supporting the more liberal view require an *overt act* of some nature to have been performed by the insured. The burden of proof is on the party asserting the change of beneficiary. These rules are well summarized on p. 510 of 2 A.L.R. (2d), *supra.* Nearly all of the pertinent cases have been decided by federal courts. Some circuits have adopted the stricter view, while others have recognized the necessity of proving only an overt act.

The United States Court of Appeals for the Ninth Circuit has adhered to the liberal view. See *Behrens v. United States,* 299 F. (2d) 662 (1962) and cases cited therein. Federal and not state law is to be applied in the interpretation of the rights and duties of the United States on insurance policies issued by it to servicemen, and to the rights of their beneficiaries or their substituted beneficiaries. *Dyke v. Dyke,* 227 F. (2d) 461 (1955); *Lembcke v. United States,* 181 F. (2d) 703 (1950); *Woodward v. United States,* 167 F. (2d) 774 (1948). Therefore, the rule followed in the Ninth Circuit should govern in the courts of the State of Washington. (Italics ours.) *Fleming v. Smith, supra.*

Assuming arguendo that the preparation and presentation of the property settlement agreement to the court is sufficient to manifest an intent to change the beneficiary, counsel have cited no authority, and we have found none, which holds that such an agreement constitutes a sufficient act to

effectuate a change of beneficiary. In fact, we find the law to the contrary. It appears well-settled that a property settlement agreement (involving a change of beneficiary) incorporated in a divorce decree is an assignment of the proceeds and as such is prohibited by 38 U.S.C. § 3101(a).[3]

*Kimball v. United States,* 304 F.2d 864 (6th Cir. 1962) is illustrative. Appellant was the first wife of the deceased veteran insured by a United States government life insurance policy. They were divorced in 1933, and, in a separation agreement incorporated in the divorce decree, the insured was required to surrender the policy to appellant and maintain it in force thereafter. He complied with this requirement.

In 1935 the insured and respondent were married. In 1946 he named her as the beneficiary of the policy. He died in 1959.

In spite of the 1933 separation agreement which had been incorporated in the divorce decree, the court decreed that the second wife (respondent) was entitled to the proceeds of the policy from the Veterans' Administration. This for the reason that under 38 U.S.C. § 749 and § 3101(a) the insured had the right at all times to change the beneficiary; and benefits due thereunder were not assignable by such an agreement.

To the same effect: *Williams v. Williams,* 255 N.C. 315, 121 S.E.2d 536 (1961); *Kauffman v. Kauffman,* 93 Cal. App. 2d 808, 210 P.2d 29 (1949); *Kaske v. Rothert,* 133 F. Supp. 427 (1955); *Eldin v. United States,* 157 F. Supp. 34 (1957).

We are aware of the per curiam opinion in *Lindeburg v. Lindeburg,* 162 So. 2d 1 (Fla. 1964), holding to the contrary. *Lindeburg* appears to stand alone and we are not convinced by its reasoning.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH and FINLEY, JJ., and LANGENBACH, J. Pro Tem., concur.

---

[3]38 U.S.C., § 3101(a) provides that:

"(a) Payments . . . shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."