**Mary L. SMITH, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**No. 26322.**

United States Court of Appeals,
Ninth Circuit.

May 8, 1972.

Frederick L. Noland (argued), Kenneth A. MacDonald, of MacDonald, Hoague & Bayless, Seattle, Wash., for plaintiff-appellant.

William H. Rubidge, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Seattle, Wash., for defendant-appellee.

---

Before JERTBERG, ELY and KIL-KENNY, Circuit Judges.

ELY, Circuit Judge:

This is an appeal from the dismissal of an action brought by the beneficiary of a National Service Life Insurance Policy against the United States. We affirm.

In 1955, Norton Smith contracted with the United States for a National Service Life Insurance Policy (hereinafter the policy) with a face value of $10,000. He named his mother, Mary Smith, the appellant, as beneficiary of the policy. Four years later, in 1959, Norton Smith obtained a divorce from his wife. As part of the settlement in that action, the divorce Decree ordered that Norton should designate his son, Michael, as the beneficiary under the policy.

Norton died in 1961 without having changed the named beneficiary under the policy. Shortly thereafter, the Veterans Administration paid the proceeds of the policy to the original beneficiary, Mrs. Mary Smith. Her claim to the money was, however, challenged by a Guardian ad Litem, one Fleming, who, on behalf of Michael Smith, filed a state court suit claiming the proceeds of the policy.

When she learned of the suit instituted by Fleming, Mrs. Smith sought assistance from the Veterans' Administration (VA). Although VA representatives agreed with her position that the proceeds were beyond the jurisdiction of any Washington court, they declined to afford her with legal assistance in defending the state court action.

Aided, then, only by private counsel, Mrs. Smith defended the action instituted by Fleming in the Washington court. Despite the clear provision of federal law to the contrary,[1] the court ruled, upon a Motion for a Summary Judgment, in Fleming's favor.

After depositing the insurance proceeds with the Washington court, Mrs. Smith appealed to the Supreme Court of Washington. At the same time, she again attempted to enlist the support and assistance of the federal government. Although she apparently received moral support from every federal official she contacted, no government agency was willing to provide legal assistance. Seeking to force the issue, Mrs. Smith then filed a claim with the VA seeking the $10,000 proceeds of the policy, reimbursement for attorneys' fees and court costs, and the institution of a suit by the VA, against Fleming, to recover the original $10,000 payment. Viewing the claim as a demand for the original proceeds under the policy, the VA denied it on the ground that it had previously paid the money owed. Mrs. Smith then pursued an administrative appeal, which was also unsuccessful.

After having been denied any assistance or relief by the Government, Mrs. Smith finally had some success. The Supreme Court of Washington reversed the lower state court decision and remanded the cause. Fleming v. Smith, 64 Wash.2d 181, 390 P.2d 990 (1964). Upon remand, Fleming's complaint was dismissed, and the dismissal was affirmed by the Washington Supreme Court. Fleming v. Smith, 69 Wash.2d 277, 418 P.2d 147 (1966). Thus, in 1966, Mrs. Smith was finally allowed the insurance proceeds. By that time, she claimed to have expended over $10,000 in her efforts to vindicate her claim to the money and that, in effect, she received nothing from the policy.

Mrs. Smith then filed her action in the District Court. She sought compensation for her expenses in the state court litigation on the ground that the

---

1. 38 U.S.C. § 3101 provides:
 "(a) Payments of benefits due or to become due under any law administered by the Veterans' Administration . . . made to, or on account of, a beneficiary shall be exempt from . . . the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

federal government, by not protecting her claim as legal beneficiary of the policy, had violated a statutory and contractual duty that it owed to her.

The statutory duty, she contended, arose from the fact that the proceeds were, by federal statute, exempt from seizure. *See* note 1, *supra*. This exemption was asserted to be a "benefit" of the policy which, given the beneficent purposes of the National Service Life Insurance (NSLI) legislation, the Government had a duty to protect. The contractual duty, on the other hand, arose, she argued, from a provision in the policy which declares it unnecessary to be represented by another person in one's efforts to receive any "benefits" under such a policy.[2] Under that provision, the VA was said to be obligated to act as agent and attorney for beneficiaries until the beneficiaries actually received the use and enjoyment of the proceeds of a policy. Upon the District Court's dismissal of the complaint, this appeal followed. Although the arguments of appellant's counsel are ingenious, they must be rejected.

 We cannot accept the Government's argument that it has not consented to suit against it. The statute governing suits based on National Service Life Insurance provides that suits may be brought whenever there is "disagreement as to claim[s]." 38 U.S.C. § 784(a). Since this case generally arises from such a disagreement,[3] the District Court had jurisdiction. The question is whether the remedy sought can be characterized as a "benefit" of the insurance policy, and we have concluded that the question must be answered in the negative.

 The task of fully protecting rightful beneficiaries of NSLI policies would be monumental. The amount of litigation into which the Government might be drawn could be enormous, especially since the proceeds from these policies do not lose their statutory protections even after, in many instances, they have been deposited into bank accounts. *See, e. g.,* Porter v. Aetna, 370 U.S. 159, 162, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407, 410 (1962). Such a burden should not be imposed absent a clear indication that Congress intended that it should be assumed.

Although Mrs. Smith advances equitable reasons why Congress might wish the Government to undertake this burden, scrutiny of the relevant statutes reveals that it has not yet done so. The policy terms and the statutory provisions advantageous to an insured and his beneficiaries are primarily intended to protect those individuals from inaction or wrongdoing by the agency charged with administering the NSLI program. Although some protection to beneficiaries is provided in section 3101, it is barren of any provision for such broad relief as was sought by the appellant in this case.

Affirmed.

---

2. A "notice" attached to the policy provided:
 "It is not necessary for the insured or any beneficiary to employ the agency of any person, firm, or corporation, in collecting the insurance under this policy, or in receiving any of its benefits. Time and expense will be saved by writing directly to the Veterans' Administration."

3. A "disagreement" over a "claim" exists whenever a claim for insurance benefits has been considered on the merits by the Veterans' Administration and denied. 38 U.S.C. § 784(h).