AETNA CASUALTY AND SURETY
COMPANY, Appellant,

v.

Harry Clifford PORTER, Appellee.

No. 16066.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 20, 1961.

Decided July 13, 1961.

Petition for Rehearing En Banc Denied
Aug. 21, 1961.

Certiorari Granted Dec. 11, 1961.
See 82 S.Ct. 384.

Mr. John L. Laskey, Washington, D. C., for appellant.

Mr. Ethelbert B. Frey, Washington, D. C., for appellee.

Before WILBUR K. MILLER, Chief Judge, and PRETTYMAN and BURGER, Circuit Judges.

WILBUR K. MILLER, Chief Judge.

Aetna Casualty and Surety Company appeals from an order of the District Court quashing its attachment of certain share or investment accounts in federal savings and loan associations which were established and augmented by Porter's committee from moneys received for him from the United States Veterans' Administration.

The situation which gave rise to the action should first be noted. Gore Properties, Inc., a corporation engaged in the real estate business in the District of Columbia, employed one William F. Hickey, as resident manager of the Ritz Apartments, one of its properties. In the summer of 1952, Hickey hired the present appellee, Harry Clifford Porter, a noncommissioned officer in the United States Air Force, to paint the interiors of several apartment units in the development. The manager knew nothing about Porter except that he had seen him in military uniform, and made no investigation into his background or character. He directed Porter to paint the apartment of one of the tenants, Miss Codie A. Whitman, a young lady who lived alone. Porter murdered Miss Whitman, for which he was subsequently indicted. His later trial resulted in a verdict of not guilty by reason of insanity.

After the murder, Miss Whitman's administratrix brought a wrongful death action against Gore, its manager, Hickey, and the American Security and Trust Company, Gore's collection agent, alleging they were negligent in hiring Porter

without any investigation into his background or character, and in failing properly to supervise and control him. The trial court directed verdicts in favor of all defendants, and the plaintiff appealed. This court reversed and remanded, as to defendants Gore and Hickey.

The defense of the wrongful death action had been undertaken by Aetna Casualty and Surety Company, under the provisions of a policy of liability insurance which it had issued to Gore. Upon remand, counsel for Aetna effected a settlement of the suit, and the company paid the settlement amount. Thereafter, under the subrogation provision of the Gore policy, Aetna sued Porter to recover the money it had paid in Gore's behalf and was awarded judgment. On October 11, 1960, Porter's appeal therefrom was dismissed as frivolous by an order of this court.

After obtaining this indemnity judgment, Aetna attached the checking account of Porter's committee and also the share or investment accounts in two federal savings and loan associations which stood in the name of the committee. The latter moved to quash the attachments on the theory that the bank checking account and the accounts in the federal associations were statutorily exempt from the claims of creditors,[1] because they were, as he alleged, payments received by the committee under a law administered by the Veterans' Administration. The District Court granted the motion to quash except as to the dividends which had been added to the accounts in the federal associations. Apparently conceding that the checking account was exempt, Aetna states in its

brief that this appeal is from the District Court's action "in quashing the attachments laid against the corpus of the investment accounts in the two savings institutions."

Thus the question is whether share accounts in federal savings and loan associations held by a veteran's committee are exempt from the claims of creditors because they were paid for with money received by the committee as "Payments of benefits due * * * under any law administered by the Veterans' Administration * * *."

The Supreme Court had before it, in *Trotter v. State of Tennessee*,[2] the question whether lands purchased by the guardian of a veteran with moneys received from the United States for the use of the disabled ward are subject to taxation. The World War Veterans' Act, there involved, provided that "The compensation, insurance, and maintenance and support allowance payments under Parts II, III and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors * * * and shall be exempt from all taxation." Mr. Justice Cardozo, writing for a unanimous court, said, 290 U.S. at pages 356–357, 54 S.Ct. at page 139:

"* * * The moneys payable to this soldier were unquestionably exempt till they came into his hands or the hands of his guardian. McIntosh v. Aubrey, 185 U.S. 122 [22 S.Ct. 561, 46 L.Ed. 834]. We leave the question open whether the exemption remained in force while they continued in those hands or on deposit in a bank. [Cases cited.] Be that as it may, we think it very clear

---

1. 38 U.S.C. § 3101(a) is, in pertinent part, as follows:
   "Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim[s] of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or

equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments. * * *"

2. 1933, 290 U.S. 354, 54 S.Ct. 138, 78 L. Ed. 358.

that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings. The statute speaks of 'compensation, insurance, and maintenance and support allowance payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises. Veterans who choose to trade in land or in merchandise, in bonds or in shares of stock, must pay their tribute to the state. * * "

Although the Trotter case left open the question whether the exemption remains in force while the benefit payments remain in the veteran's hand "or on deposit in a bank," the Supreme Court thought it "very clear" that the exemption ends when the benefit payments are converted into permanent investments, land, buildings, bonds or shares of stock.

Congress answered the first of these reserved questions by providing that the payments shall not be liable to process "either before or after receipt by the beneficiary" in § 3 of the World War Veterans' Act of 1935.[3] The second question was answered by the Supreme Court in Lawrence v. Shaw[4] when it said concerning bank deposits stipulated to be "uninvested balances" of the government payments:

> " * * * We hold that the immunity from taxation does attach to bank credits of the veteran or his guardian which do not represent or flow from his investments but result from the deposit of the warrants or

checks received from the government when such deposits are made in the ordinary manner so that the proceeds of the collection are subject to draft upon demand for the veteran's use. In order to carry out the intent of the statute, the avails of the government warrants or checks must be deemed exempt until they are expended or invested."

The Supreme Court had occasion to construe 38 U.S.C. § 3101 in Carrier v. Bryant.[5] Relying on Trotter v. State of Tennessee and Lawrence v. Shaw, supra, the Court held that investments purchased with money received in settlement of benefits are not "payments due or to become due" which are statutorily exempt from the claims of creditors.

The immediate question is, therefore, whether the acquisition of share accounts in federal associations is an investment of the type the Supreme Court said is not exempt, or whether it is tantamount to an uninvested balance of government payments on deposit in a bank, which has been held to be exempt.

It appears that here the committee deposited in his ordinary checking account all government payments received by him. He paid out of that account the ordinary and necessary expenses incident to the veteran's care and maintenance, and built up the accounts in the federal associations by drawing from the checking account such sums as he thought could be withdrawn without jeopardizing its adequacy for the payment of current expenses. This was done under the authority of Rule 23 of the District Court which governs the investment of trust funds.[6]

3. 49 Stat. 607, 609; 38 U.S.C. § 454a.
4. 1937, 300 U.S. 245, 250–251, 57 S.Ct. 443, 445, 81 L.Ed. 623.
5. 1939, 306 U.S. 545, 547, 59 S.Ct. 707, 708, 83 L.Ed. 976.
6. Rule 23 is in part as follows:
   "Investment of trust funds, unless otherwise provided in the instrument creating the trust, or except under extraordinary conditions set forth fully to the court, will ordinarily be sanctioned only

when made in the obligations meeting the following requirements:

\* \* \* \* \*

"Section II–a. *Federal Savings and Loan Associations, Building and Loan Associations, and Savings and Loan Associations.* Investment shares, certificates and deposit accounts in said institutions not exceeding $10,000.00 in one institution, provided such institution is located and doing business in the District of Columbia and its accounts are insured

Obviously the committee created the accounts in the federal associations so that he might obtain for Porter some income from funds not immediately needed for his maintenance, which could not be obtained so long as such funds remained on deposit in his ordinary checking account. From this we conclude that the committee acquired the federal associations' shares by way of investing that portion of the government payments which he considered to be surplus income over and above ordinary and necessary expenses.

■ It may not be generally known, but it is nevertheless true, that federal savings and loan associations are not obligated to permit withdrawals on demand, but only to honor withdrawal requests within thirty days. This fact not only sharply distinguishes the share accounts from ordinary bank deposits by preventing their use as checking accounts, but also stamps them with the characteristics of investments. A share account in a federal association is distinguishable from an ordinary bank savings deposit in other respects: the owner of the share account becomes, by virtue of that ownership, a voting member of the association and thus more nearly comparable to a stockholder of a bank than one of its depositors; and we have shown that, as a share account owner, he is not a creditor of the association as a depositor is a creditor of the bank. Indeed the Home Owners Loan Act under which a federal association is created describes the purpose as "to provide local mutual thrift institutions in which people may *invest* their funds \* \* \*." 12 U.S.C.A. § 1464. (Emphasis added.) While it is not a controlling consideration, it should be noted that the yield on share accounts in a federal association is generally higher than on deposits in savings banks. Cf. Wisconsin Bankers Association v. Rob-

ertson, 1961, 111 U.S.App.D.C. ——, 294 F.2d 714.

We think it clear that the committee's accounts in the federal savings and loan associations were investments subject to the claims of creditors. It follows that the District Court erred in quashing the attachments. Its order will be set aside and the case will be remanded with instructions to deny the motion to quash and to grant the motion for judgment subjecting the share accounts to appellant's judgment debt.

It is so ordered.

PRETTYMAN, Circuit Judge (dissenting).

The clear purpose of the Act "[t]o safeguard the estates of veterans derived from payments of pension," etc.,[1] is to make these benefit payments available for use in the current maintenance and support of the veteran, without interference by taxes or creditors. Consistent with this principle the courts have held that so long as the payments remain as a bank deposit they are immune from outside absorption;[2] but, when they pass into the form of investments in land or buildings (which would indicate they are not currently needed), they lose their immunity. Thus, to my mind, the cases clearly implement the basic Congressional purpose.

In the case at bar the benefit payments were deposited in "Savings Account[s]" with federal savings and loan associations. This was not a disposition which made the funds difficult of availability for current purposes. The majority opinion points to rules of the associations requiring 30 days' notice for withdrawal, but at least one of them advertises (Ex. C) that since its organization in 1907 its practice has been to pay withdrawals promptly upon demand; indeed my understanding (which is such common understanding that I can take judicial notice of the fact) is that no such asso-

by the Federal Savings and Loan Insurance Corporation under the provisions of Subchapter IV, Title 12 of the United States Code."

1. 49 Stat. 607 (1935).

2. E. g., Lawrence v. Shaw, 1937, 300 U.S. 245, 57 S.Ct. 443, 81 L.Ed. 623.

ciation in Washington requires such notice. In respect to ordinary savings accounts banks generally reserve a right to demand 30 or 60 days' notice,[3] but as a matter of custom the depositor can withdraw upon demand. Needs for current maintenance and support are not necessarily steady in amount month by month; such needs fluctuate; savings from the monthly income for several months may be accumulated to meet a recurrent need; a suit of clothes, potential doctors' bills, repairs to a home are a few examples from many familiar items. And in the case before us there are the potential needs of rehabilitation.

Of course the nature of some dispositions of funds is clear; purchases of land, stocks, etc., on the one hand and regular checking accounts in banks on the other. It seems to me that the facts surrounding the deposits we have here would be material, even dispositive, in the case. On the naked legalisms they might be one or the other. On the facts their nature might clearly appear. Thus, if they had been left on deposit for a long time while current needs were met by other funds, or if their accumulation were much in excess of current needs (including a reasonable auxiliary reserve for contingencies), the deposits might clearly appear to be investments. But, if the facts were that these deposits were periodically used for current needs, or if they were actually so needed and were available and the committee intended so to use them, their nature as current deposits might clearly appear. Deposits in these associations may, as a bare legal matter, be one or the other.

I would not decide this case upon niceties of legalisms as to a "deposit" and an "investment". I would decide it on the broad intention of the statute, as construed by the courts, and the plain, simple facts of the case. Here the committee put part of the benefit payments in accounts in financial institutions where by practice they are readily available, meantime accumulating a small interest, surely as many a prudent person living on periodical payments would do; and now the committee says he wants to, and would, withdraw the funds for purposes of maintenance and support of the veteran.

The committee before us claims he can prove by documentary evidence that he actually needs, and would use, these funds to meet a bill already rendered him for current subsistence of this veteran.

I would remand the case for a factual determination of the nature of these deposits, i. e., current deposits or investments in the sense in which the Supreme Court used that term in the Lawrence case.[4] I suppose the burden of proof should be on the committee, since he alone has the requisite information.

---

3. See Mallett v. Tunnicliffe, 1931, 102 Fla. 809, 136 So. 346, 137 So. 238, 80 A.L.R. 785.

