## PORTER v. AETNA CASUALTY & SURETY CO.

No. 604.  Argued April 25, 1962.—Decided June 11, 1962.

*Ethelbert B. Frey* argued the cause and filed a brief for petitioner.

*John L. Laskey* argued the cause for respondent.  With him on the brief was *Richard Whittington Whitlock.*

*John G. Laughlin, Jr.* argued the cause for the United States, as *amicus curiae,* urging reversal.  With him on the brief were *Solicitor General Cox, Assistant Attorney General Orrick* and *Herbert E. Morris.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This case raises the question of whether benefits paid by the United States Veterans' Administration retain their exempt status under 38 U. S. C. § 3101 (a) [1] after being

---

[1] "(a) Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States

deposited in an account in a federal savings and loan association. Petitioner, an incompetent Air Force veteran, had suffered a judgment at the hands of respondent. The latter in an effort to satisfy its judgment attached a checking account and two accounts in local federal savings and loan associations, all of which had been established by petitioner's Committee with funds received from the Veterans' Administration as disability compensation due the petitioner. The District Court, on motion, held all three of the accounts exempt under the statute. 185 F. Supp. 302. Respondent appealed as to the savings and loan association accounts, and the Court of Appeals for the District of Columbia reversed in a divided opinion. 111 U. S. App. D. C. 267, 296 F. 2d 389. Certiorari was granted in view of the importance of the question in the administration of the Act. 368 U. S. 937. We agree with the District Court that the funds involved here are exempt under the statute; therefore we reverse the judgment below.

Since 1873 it has been the policy of the Congress to exempt veterans' benefits from creditor actions as well as from taxation.[2] In 1933 in *Trotter* v. *Tennessee,* 290 U. S. 354, the Court had occasion to pass upon the exemptive provision of the World War Veterans' Act of 1924, 43 Stat. 607, 613. It held that the exemption spent its force when the benefit funds "lost the quality of moneys" and were converted into "permanent investments." This distinction was adopted by the Congress when the Act was

---

arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments. The provisions of this section shall not be construed to prohibit the assignment of insurance otherwise authorized under chapter 19 of this title, or of servicemen's indemnity."

[2] Act of Mar. 3, 1873, R. S. § 4747 (1878); World War Veterans' Act of 1924, c. 320, § 22, 43 Stat. 607, 613; Act of Aug. 12, 1935, c. 510, § 3, 49 Stat. 607, 609.

amended in 1935, 49 Stat. 607, 609, to provide, *inter alia,* that such payments shall be exempt "either before or after receipt by the beneficiary" but that the exemption shall not "extend to any property purchased in part or wholly out of such payments." [3] Thereafter in *Lawrence v. Shaw,* 300 U. S. 245 (1937), the Court held that bank credits derived from veterans' benefits were within the exemption, the test being whether as so deposited the benefits remained subject to demand and use as the needs of the veteran for support and maintenance required. It was noted that the allowance of interest on such deposits would not destroy the exemption. Two years later the Court held that negotiable notes and United States bonds purchased with veterans' benefits and "held as investments" had no federal statutory immunity. *Carrier v. Bryant,* 306 U. S. 545 (1939). The Act was again amended in 1958, but no significant changes were made in the exemption provision. As so written it is here at issue.

It appears that the practices and procedures vary as to withdrawal of funds from federal savings and loan associations. Under the law the depositor is a shareholder rather than a creditor, and his deposits are subject to withdrawal only after a 30-day demand. However, the District Court found that a withdrawal from the accounts here involved could be made "as quickly as a withdrawal from a checking account . . . ." In addition, the integrity of the deposits was assured by federal supervision of the associations plus federal insurance of the accounts. Under such conditions the funds were subject to imme-

---

[3] The statutory language reads only that the exemption "as to taxation" shall not extend to property purchased with benefits. However, in *Carrier v. Bryant,* 306 U. S. 545 (1939), the Court held that benefits invested in property were also nonexempt from creditor actions, since they were not "payments of benefits due or to become due" and thus did not fall within the initial immunizing language.

diate and certain access and thus plainly had "the quality of moneys." As to whether the deposits were "permanent investments," we note they were not of a speculative character nor were they time deposits at interest. Moreover, it affirmatively appears that at times petitioner drew moneys from the savings and loan fund for his support and maintenance requirements and that no other funds whatever are now available to him, his disability payments having been cut off. It therefore appears clear to us that the savings and loan deposits here, rather than being investments, are the only funds presently available to meet petitioner's needs.

Since legislation of this type should be liberally construed, see *Trotter* v. *Tennessee, supra,* at 356, to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof, *Lawrence* v. *Shaw, supra,* at 250, we feel that deposits such as are involved here should remain inviolate. The Congress, we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments.

*Reversed.*

The Chief Justice and Mr. Justice Frankfurter took no part in the consideration or decision of this case.

Mr. Justice Douglas.

Heretofore the test of exemption under this Act has been whether the funds had taken the form of "permanent investments," on the one hand (*Trotter* v. *Tennessee,* 290 U. S. 354, 357), or on the other were "subject to

draft upon demand," as in the case of checking accounts. *Lawrence* v. *Shaw,* 300 U. S. 245, 250. Negotiable notes and United States bonds were held to be nonexempt in *Carrier* v. *Bryant,* 306 U. S. 545. Yet so far as we know, those notes and bonds may have had the same or a comparable degree of liquidity as the present share account in the federal savings and loan association enjoys. Today, however, we hold these accounts exempt. Stocks and bonds cannot, of course, be fractionalized and converted into cash in small amounts, such as may be done with savings accounts and checking accounts. But stocks and bonds may be so liquid as to be tantamount to cash in hand and therefore serve, as well as any bank deposit, the needs of the veteran.

By the standards announced in the earlier decisions share accounts in federal savings and loan associations are "investments." See *Wisconsin Bankers Assn.* v. *Robertson,* 111 U. S. App. D. C. 85, 294 F. 2d 714. They can be withdrawn only after 30 days' notice. The owner of a share account is a voting member of the association which, as the Court of Appeals noted, makes him "more nearly comparable to a stockholder of a bank than one of its depositors." 111 U. S. App. D. C. 267, 270, 296 F. 2d 389, 392. Moreover, the Home Owners' Loan Act, under which this federal association was created, makes clear that its purpose is "to provide local mutual thrift institutions in which people may *invest* their funds." 12 U. S. C. § 1464 (a). (Italics added.) Its capital[1] is in "shares" (12 U. S. C. § 1464 (b)) such as are involved here.

---

[1] "Capital" means "the aggregate of the payments on savings accounts," plus earnings, less deductions. See 12 CFR § 541.3. "Savings account," such as we have here, is "the monetary interest of the holder" in the "capital" of the association. *Id.,* § 541.4. The account book evidences "the ownership of the account and the interest of the holder thereof in the capital" of the association. 12 CFR § 545.2 (b).

164

The holders of savings accounts who apply for a withdrawal of funds do not thereby become "creditors." [2]

In some States these share accounts may not be as liquid as checking accounts or even as liquid as stocks and bonds listed on an exchange or actively traded over-the-counter. The true test seems to me to be liquidity—that is to say, whether or not the moneys are kept in a form in which they are usable, if need be, "for the maintenance and support of the veteran," as Chief Justice Hughes said in *Lawrence* v. *Shaw, supra,* at 250.

---

[2] "Holders of savings accounts for which application for withdrawal has been made shall remain holders of savings accounts until paid and shall not become creditors." 12 CFR § 544.1 (a) par. 6.