**In re James FRAZIER, Debtor.**

**Bankruptcy No. MM7–90–00085.**

United States Bankruptcy Court,
W.D. Wisconsin.

July 10, 1990.

Patricia K. Hammel, Madison, Wis., for debtor.

Catherine J. Furay, Axley Brynelson, Madison, Wis., for trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

This objection to exemptions was submitted for decision without trial on the following undisputed facts. On January 11, 1990 the debtor, James Frazier, filed a petition under Chapter 7 of the Bankruptcy Code. In his schedules he claimed as exempt under 11 U.S.C. §§ 522(d)(10)(A) and (C) "Social Security disability benefits (cash in bank accounts, uncashed check)" in the amount of approximately $6,475.00. The uncashed check is in the amount of $3,975.00, while the remainder, $2,500.00, is in the debtor's sole bank account.

In May of 1989 the debtor's bank account was opened with the deposit of a $33,000.00 "back benefit" lump sum disability check. Since that time, the debtor has deposited his $944 monthly income ($617.00 Social Security disability check and $327.00 pen-

sion check), into the account. The debtor has no other income except AFDC and disability money paid to him on behalf of his minor grandson/ward, which is also deposited in the account. All of the debtor's living expenses, stated in his schedules to be $1,231.00 per month, are paid from the account. The $287 difference between his monthly income and his monthly expenses is being met from what is left of the lump sum disability payment.

The trustee contends that "the exemption provided in § 522(d)(10) is related to the right to receive *future* payments and does not apply to accumulated benefits which have already been distributed." The trustee further asserts that the fact "[t]hat a debtor might be entitled to an exemption under some other federal law is no longer of consequence" because the debtor chose his exemptions under Section 522(d). As to this latter contention the trustee appears to be on very firm ground. The Seventh Circuit Court of Appeals has stated:

> The legislative history [to Section 522(b)] is explicit on the point that the debtor must choose either the exemptions to which he is entitled under the federal exemptions scheme, or those to which he is entitled under other federal law and the state of his domicile. H.R.Rep. No. 595, 95th Cong. 1st Sess. 362 (1977). That a debtor might be entitled to an exemption under some other federal law is of no consequence once the debtor has elected the exclusive list of federal exemptions outlined in the Bankruptcy Code. Other federal exemptions are only available to the debtor if he chooses the state exemptions. H.R.Rep. No. 595, 95th Cong. 1st Sess. 360 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 75 (1978).

*Matter of Kochell,* 732 F.2d 564, 566 (7th Cir.1984). Because the debtor chose the exemptions under Section 522(b)(1), his disability benefits qualify for exemption, if at all, only under Section 522(d)(10).

The central question presented, then, is whether § 522(d)(10) is limited to payments not yet received when the bank-

ruptcy case was filed. I conclude that it is not.

11 U.S.C. § 522(d)(10)(A) (1986) provides that a debtor may exempt under 11 U.S.C. § 522(b)(1) "[t]he debtor's right to receive—a social security benefit, unemployment compensation, or a local public assistance benefit." Similarly, 11 U.S.C. § 522(d)(10)(C) (1986) allows a debtor to exempt under 11 U.S.C. § 522(b)(1) "[t]he debtor's right to receive—a disability, illness, or unemployment benefit." The legislative history to Section 522(d)(10) indicates that the provision "exempts certain benefits that are akin to future earnings of the debtor." H.Rep. No. 595, 95th Cong., 1st Sess. 362, *reprinted in* U.S.Code Cong. & Ad.News 5787, 5963, 6318.

The debtor contends that "[t]he legislative history of 11 USC § 522(d) does not clearly demonstrate an intention to exclude lump sum or periodic payments already received when the estate is created from the category of exempt benefits." He further asserts that "[t]he 1983 amendments to the Social Security Act indicates [sic] Congress's intent to protect such benefits from creditors' claims whether 'paid or payable,' and regardless of which exemption scheme the debtor has selected."

In support of her position that Section 522(d)(10) provides an exemption only for disability benefits yet to be received, the trustee relies on the portion of the legislative history stating that the benefits referred to in Section 522(d)(10) are "akin to future earnings." The suggested limitation is by no means clear from the language of the statute, which simply exempts a debtor's "right to receive" a disability benefit.

Justice Scalia, in *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct.

626, 630, 98 L.Ed.2d 740 (1988) (citations omitted), stated:

Statutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear ... or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law[.]

Section 407 of the Social Security Act,[1] like Section 522(d)(10) of the Bankruptcy Code, is designed to protect social security benefits from the reach of creditors. Although Section 407 does not apply to create the basis for the debtor's exemption in this case, Section 407 is part of Congress' treatment of the issue of social security benefits in bankruptcy, and the law existing under Section 407 should be considered in construing Section 522(d)(10).

In *Buren*, the Sixth Circuit Court of Appeals elaborated upon the reasoning behind Section 407:

When Congress amended Title XVI, [which "established a welfare program for needy individuals who are aged, blind, or disabled"], it explicitly incorporated section 407 to protect the beneficiaries of the new and revised programs. 42 U.S.C. § 1383(d)(1). The committee reports that were written when the amendments were proposed in 1971 explained the rationale for the prohibition against assignments [contained in Section 407]:

Your committee wishes to emphasize its strong belief that if the benefits which would be provided under this program are to meet the most basic needs of the poor, the benefits must be protected from seizure in legal pro-

---

1. 42 U.S.C. § 407 (1983) provides:

   **(a) Inalienability of right to future payments**
   The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment,

   or other legal process, or to the operation of any bankruptcy or insolvency law.

   **(b) Inamendability of section by inference**
   No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

cesses against the beneficiary. Therefore, any amounts paid or payable under this program would not be subject to levy, garnishment, or other legal process, except the collection of delinquent Federal taxes. Also, entitlement to these benefits would not be transferable or assignable.

H.R.Rep. No. 92–231, 92nd Cong., 1st Sess. 156 (1971), *reprinted in* [1972] U.S. Code Cong. & Ad.News 4989, 5142.

*In re Buren,* 725 F.2d 1080, 1084 (6th Cir.1984).

■ As the trustee noted, "[a]ll laws are presumed to be consistent with each other. Where it is possible to do so, it is the duty of the court to harmonize and reconcile statutory provisions." *See* 73 Am Jur 2d *Statutes* § 254 (1974) and cases cited therein. Section 522(d)(10), which provides an exemption, must be liberally construed. A construction which exempts both benefits received and benefits to be received harmonizes Section 522(d)(10) with Section 407(a), which requires that "none of the moneys paid or payable . . . shall be subject to . . . the operation of any bankruptcy or insolvency law," and represents the more liberal application. It is, moreover, consistent with the requirement in Section 407(b) that no statute "may be construed to limit . . . the provisions of this section" except by express reference to Section 407.

A disability benefit, (whether a periodic or lump-sum payment), is not divested of its character as a payment in the nature of future earnings simply by virtue of its receipt by the beneficiary prior to the time the bankruptcy petition is filed. The timing of the payment ought not deprive a recipient of those monies meant to be spent for his basic care and maintenance by eliminating the recipient's right to exempt those funds.[2]

■ The debtor's benefits represented by the uncashed check are readily identifiable and retain their exempt status. Although it is less clear, the debtor's benefits now held in the deposit account also retain their exempt status. 31 Am Jur 2d *Exemptions* § 224 (1989) states the general rule:

There is authority that a deposit of exempt funds in a bank does not affect a debtor's exemption, nor change the exempt character of the fund, so long as the source of the exempt funds is reasonably traceable. If it is impossible to separate out exempt from nonexempt funds, the general rule is that an exemption cannot lie. This rule has been applied, though not without exception, to a deposit of exempt wages, exempt compensation awards, exempt veterans' benefits, and exempt insurance proceeds or funds.

The trustee concedes that the debtor's lump sum and regular disability benefits were placed into his deposit account, but asserts that "funds have been commingled from various sources and are not traceable in their entirety." Other than his social security disability benefits and pension benefits, the only deposits alleged to have been made to the account were AFDC and disability money paid on behalf of the debtor's grandson/ward. All the deposited funds are themselves exempt. The trustee has never contended that non-exempt funds were placed in the account.

The fact that the disability benefit funds traced in the account have been commingled with other exempt funds is irrelevant to the consideration of whether the disability funds retain their exempt status under Section 522(d)(10). In *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 416, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973), the United States Supreme Court addressed the similar question of whether Section 407 extended protection to funds contained in a deposit account:

The protection afforded by § 407 is to "moneys paid" and we think the analogy to veterans' benefits exemptions which were reviewed in *Porter v. Aetna Casu-*

---

**2.** Courts in numerous cases have determined that state laws precluding the assignment of workers compensation benefits applied to protect from the claims of creditors benefits which had already been paid to the recipients. *See In re Nolen,* 65 B.R. 1014 (Bankr.D.N.M.1986); *In re Covey,* 36 B.R. 696 (Bankr.W.D.Ark.1984); *Surace v. Danna,* 248 N.Y. 18, 161 N.E. 315 (1928), and cases cited therein.

*alty Co.,* 370 U.S. 159 [82 S.Ct. 1231, 8 L.Ed.2d 407], is relevant here. We held in that case that veterans' benefits deposited in a savings and loan association on behalf of a veteran retained the "quality of moneys" and had not become a permanent investment. *Id.,* at 161–62 [82 S.Ct., at 1232.]

In the present case, as in *Porter,* the funds on deposit were readily withdrawable and retained the quality of "moneys" within the purview of § 407.

In *Porter* the Supreme Court had stated:

Since legislation of this type [38 USC § 3101(a), concerning the anti-assignment and exemption of veterans' benefits] should be liberally construed, see *Trotter v. Tennessee, supra,* [290 U.S. 354] at 356 [54 S.Ct. 138 at 139, 78 L.Ed. 358 (1933)], to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof, *Lawrence v. Shaw, supra,* [300 U.S. 245] at 250 [57 S.Ct. 443 at 445, 81 L.Ed. 623 (1937)], we feel that deposits such as are involved here should remain inviolate. The Congress, we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments.

*Porter v. Aetna Casualty Co.,* 370 U.S. 159, 162, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407 (1962). These same considerations apply with respect to funds in a deposit account claimed to be exempt under Section 522(d)(10).

In our case, the debtor's remaining disability benefits are funds on deposit, readily withdrawable and available as needed for the debtor's support and maintenance. As such, they retain the "quality of moneys" and have not become a permanent

investment. They continue to be protected by the exemption granted under Section 522(d)(10).

The trustee has failed to establish that the debtor's claimed exemptions should not be allowed. The trustee's objection to the debtor's claim of exemption in the disability benefits contained in his deposit account and in the form of an uncashed check must be denied.[3]

---

**3.** In reaching these conclusions, all of the evidence, arguments, and pleadings filed in this case have been carefully considered, regardless of whether they are specifically referred to in this Memorandum Decision.