[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before the Court are multiple post-judgment motions made by both the defendants, the Lincoln Housing Authority and John Palma, and the plaintiff, Amy Adler, following entry of judgment in favor of the plaintiff in the above action.
Defendants request the following. John Palma has moved this Court to vacate the June 14, 1990 restraining order enjoining him from encumbering and/or withdrawing IRA funds withdrawn from the Fairlawn Credit Union and purportedly transferred to a bank in St. Petersburg, Florida in the name of John Palma. Additionally, John Palma has moved this Court to vacate the restraining order and dissolve the attachment of June 20, 1990 of two joint checking accounts — Nos. 0431380 and 1207265 — both in the name of John Palma and his wife, Christine Palma, and presently in the possession of Bank of New England Old Colony. John Palma also objects to plaintiff's July 11, 1990 writ of Attachment seeking to obtain all property or funds held by the Lincoln Housing Authority on behalf of John Palma and including retirement, vacation, and sick days due him. The defendant Lincoln Housing Authority also has before this Court a Motion to Quash Execution and Vacate Return served upon it and a Motion Objecting to Deposition.
Alternatively, the plaintiff has moved this Court to charge the Lincoln Housing Authority as garnishee for both wages it withheld, and those it should have withheld, on behalf of the plaintiff pursuant to the court's order of June 14, 1990 attaching John Palma's wages.
With respect to garnishment of IRA wages, this Court finds the plain and clear language of R.I.G.L. 1956 (1985 Reenactment) § 9-26-4(11) controlling. As § 9-26-4(11) in pertinent part provides that an IRA, as defined in Section 408 of the I.R.C., is exempt from attachment, this Court is not persuaded by plaintiff's argument that satisfaction of a judgment in a civil proceeding is analogous to payment of creditors from a bankrupt estate or distribution of marital assets in a divorce proceeding. More specifically, in Stevenson v. Stevenson, 511 A.2d 961
(R.I. 1986) (relied on by the plaintiff) involving the equitable distribution of marital assets, the court acknowledged that §9-26-5, essentially exempting policemen's and firemen's pensions from attachment and assignment, did not preclude inclusion of the pension as a marital asset. However, the Stevenson court further noted that it did not decide whether § 9-26-5 would also preclude "division" of the police officer's pension plan upon dissolution of the marriage. As equitable distribution considers economic tangible as well as intangible assets and as § 9-26-4(11)(a) and (b) carve out exceptions to 11(c) IRA exemptions in the areas of divorce, separate maintenance, and child support, respectively, this Court finds analogy to the above is not warranted by the case fact pattern at bar. Additionally, 29 USCA 1001(a), the first paragraph of ERISA, evidences Congress' intent to protect not only the employee pensions, but also his or her dependents.Ward v. Ward, 396 A.2d 365, 369 (R.I. 1978). Accordingly, the anti-alienation provisions in private plans would conflict with such an objective of the federal law.
Plaintiff further argues that various courts with respect to bankrupt estates have held similar state statutory exemptions regarding IRA funds to be preempted by Section 514(a) of ERISA,29 U.S.C. § 1144(a) and have thus not included IRA funds in the bankrupt estate. In In Re Flindall, 105 B.R. 32 (Banktcy. D. Ariz. 1989), the court held that a state IRA exemption statute which referred to sections of the IRC governing the tax states of ERISA plans related to and was thus preempted by ERISA. Pertinent to the case at bar is the fact that the Rhode Island IRA Exemption statute 9-26-4(11) on which plaintiff relies, in contrast to § 9-26-4 (12), does not refer to ERISA. Additionally, unlike the situation in Mackey v. Lanier Collections Agency andService Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), wherein a state exemption statute regarding welfare plans specifically mentioned ERISA and also conflicted with the ERISA provision regarding garnishment of welfare plans, § 9-26-11
neither refers to ERISA nor technically conflicts with ". . . ERISA's purpose of protecting pension money from attachment by creditors." In Re Martinez, 107 B.R. 378, 380 (Bkrtcy. S.D. Fla., 1989). ERISA § 201(6) 29 USCA § 1051(6) (West 1985) specifically states that its provisions do not apply to individual retirement accounts.
Furthermore, as noted by the court in In Re Martin, 102 B.R. 639
(Bkrtcy. E.D. Tenn. 1989), which ultimately held that an IRA established under IRC § 408 is outside the preemptive scope of ERISA, "[t]he legislative history for IRC § 408 indicates that Congress intended IRAs to provide comparable tax advantages to individuals not participating in an ERISA-qualified plan."Id. at 643. Accordingly, per § 9-26-4, this Court denies plaintiff's prayer to compel the Lincoln Housing Authority to pay to plaintiff $1056.84 and instead compels the defendant Lincoln Housing Authority to pay over $879.08, the amount actually withheld.
Also at issue before this Court is whether defendant Palma's accrued vacation and sick days owed to him by the Lincoln Housing Authority constitute "wages," and are thus eligible for a 75% exemption per 15 U.S.C. § 1673 (a). § 1672(a) defines "earnings" as
. . . compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program. (Emphasis added).
Interpreting this same statute, the court in Gerry Elson AgencyInc. v. Muck, 509 S.W.2d 750, (Mo. App. 1974) advised other courts to ignore and instead to focus on whether such payments constituted "compensation for personal services" in classifying same as "earnings." Again, in Riley v. Kessler, 441 N.E.2d 638,2 Ohio Misc.2d 4 (1982), the court held that vacation pay does constitute "earnings" which are subject to garnishment and attachment. Consequently, the accumulated sick leave pay to Palma and all the accumulated vacation leave payable to Palma accrued but unpaid until his termination would fall within the "compensation . . . payable for personal services" section of15 U.S.C. § 1672(a). In contrast, a lump-sum severance payment not traceable to sick days and vacation days would be subject to garnishment. Pallante v. International Venture Investments, 622 F. Supp. 667 (D.C. Ohio 1985). Accordingly, this Court grants plaintiff's request to make an inquiry of the exact amount of monies due Palma from the Lincoln Housing Authority. After the necessary taxes are deducted, twenty-five percent of said funds may then be garnished pursuant to the wage attachment issued by this Court on June 14, 1990. This Court further orders the defendant Lincoln Housing Authority to pay to plaintiff the balance of these funds in partial satisfaction of the judgment rendered against John Palma.
This Court further finds the attachment of June 20, 1990 of joint checking account number 1207265 in the name of John Palma and his wife, Christine Palma and in the possession of Bank of New England Old Colony to be proper. This Court finds unpersuasive defendant Palma's argument that plaintiff's successful attempts to attach this account containing the rental proceeds from the property located at 765 Charles Street in Providence and held by John and Christine Palma as tenants by the entirety would ultimately constitute a "levy" of said property. In support of his position, defendant Palma argues that wherein the rental income does not now cover the mortgage, taxes, and maintenance payments for this property, the Palmas would "probably" be forced to sell same, and as "hypothetically" plaintiff would seek to obtain the proceeds from this sale, Mrs. Palma would be illegally penalized. The Rhode Island case law comports with the majority view that the husband's creditor may levy against a bank account maintained by the husband and the wife, at least to the extent that the funds held in the account are shown to be the property of the husband. In Catlow v.Whipple, 34 R.I. 381, 83 A. 753 (1912), involving a bank account jointly held by a husband or wife `or the survivor to them,' the judgment creditor was permitted to attach one-half the extent of the defendant husband's interest, in this case fifty percent, after an evidentiary showing. Analogous is the case at bar involving a joint account containing rental income from a property held by husband and wife as tenants by the entirety. Rhode Island law uniquely permits attachment of one's spouse's interest in the entirety estate, but forbids levy and sale of that same interest. In Re Gibbons, 52 B.R. 861 (Bkrtcy. 1985). However, the instant attachment is not on real estate. Consequently, this Court denies defendant Palma's motion to dissolve the attachment of account No. 1207265 as all monies in this account which are the property of John Palma are subject to execution by the judgment creditor. The parties may proceed by proper discovery to ascertain the respective ownership interests of the parties to the joint account.
Also attached is account no 0431380, again a joint account in the name of John and Christine Palma and in the possession of Bank of New England Old Colony. Defendant Palma here primarily argues that as this account contains veteran's disability and retirement benefits directly deposited from the United States Government, this account is exempt from attachment. Regarding Palma's veteran's disability benefits, 38 U.S.C. § 3101(a) applies § 3101(a), entitled "Nonassignability and exempt status of benefits" in pertinent part provides
 Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and . . . shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.
Congress' purpose in enacting this section was to protect these funds for the maintenance and support of veterans and their beneficiaries. Porter v. Aetna Casualty Co., 370 U.S. 159, 162, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962). Consistent with this Congressional objective, case law interpreting this statute distinguishes between benefits that once paid are "invested" and thus lose their character and those that do not become "investments." Disability payments in the amount of twenty thousand dollars which were invested by a veteran in a mortgage note payable to him lost their § 3101 exempt status. Pfeil v.Pfeil, 341 N.W.2d 699, 115 Wis.2d 502 (1983). The Pfeil court, citing the distinction between "benefits payments and property purchased with money therefrom," held that these disability investments lost their exemption and became available for equitable distribution here as a marital asset. Id. at 703. The direct deposit of Veterans' Administration benefits coupled with the pattern of withdrawals evidenced by an examination of the judgment debtor's bank statements has been an evaluating standard used by courts in determining whether such benefits lose their character as monies. Younger v. Mitchell, 777 P.2d 789 (Kan. 1989). After an examination of the bank statements for Palma's directly deposited Veterans' Administration benefits, this Court is satisfied that these payments have retained their character as monies. Consequently, with respect to Palma's Veterans' Administration benefits contained in Act. No. 0431380, these payments are presently deposited "monies." As long as they remain readily available for Palma's support and maintenance and do not become personal investments, these funds will continue to be exempt from attachment per 38 U.S.C. § 3101(a).
Conversely, Palma's Air Force retirement benefits are not exempt from attachment per 38 U.S.C. § 3101(a), which provides specifically for only Veterans Administration benefits exemptions. In Ex parte Burson, 615 S.W.2d 192, 194 (Texas 1981), the court here held that as military disability retirement pay and Veterans Administration benefits are established by different statutory schemes, "Veteran's Administration benefits unlike Air Force disability retirement benefits are not divisible or assignable." Accordingly, Palma's Air Force retirement benefits now deposited in Bank of New England Old Colony account number 1267265 are subject to execution to satisfy the judgment rendered against him.
Regarding the defendant Lincoln Housing Authority's Motion to Quash Execution and Vacate Return, said motion is granted in part and denied in part. The motion to vacate the return of execution is denied, it having been a lawful act made pursuant to a valid court execution at the time it was served. The motion to quash the execution is granted in that R.I.G.L. 1956 (1985 Reenactment) § 45-27-14 exempts public housing authorities from executions. Accordingly, the defendant Lincoln Housing Authority's Motion Objecting to Deposition is also denied.
Plaintiff's motion to charge the Lincoln Housing Authority as garnishee for those wages it withheld, as well as for those wages which were properly due to the employee for that payroll period at the time of service (of the writ of attachment and notice to employer (Garnishee Affidavit #1 (Exhibit D)) is granted. In all other respects, plaintiff's motion to charge the Lincoln Housing Authority as garnishee is denied in that said motion is an apparent attempt to escape the application of R.I.G.L. §45-27-14, exempting public housing authorities from executions, in addition to this Court's finding the employer's deduction of Palma's voluntary IRA contributions to be proper. Counsel shall prepare an order reflecting the findings made by this Court and requesting any appropriate relief to effectuate this Court's order relative thereto.
Lastly, plaintiff's third petition for attorney's fees for services rendered from May 16, 1990 through June 21, 1990 is granted pursuant to 42 U.S.C. § 1988. Plaintiff's first petition was granted by this Court on July 20, 1989 ("Fee Decision I") and the second petition on September 21, 1990 ("Fee Decision II"). After review of plaintiff's counsel's documents and consistent with the case law presented in Fee Decision II, this Court find's plaintiff's third request to be reasonable, the skill of her attorneys exemplary, the rate requested fair, and the lodestar adjustment justified. Plaintiff has clearly proven entitlements to attorneys' fees in the amounts sought plus statutory interest from the date of the award.
Counsel shall prepare all the appropriate orders required to effectuate the findings made by this Court.