Vickie J. GOODEMOTE, Appellee

v.

John R. GOODEMOTE, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 6, 2011.

Filed May 1, 2012.

Joann M. Jofery, Sharon, for appellant.

Joseph M. Gula, Greenville, for appellee.

BEFORE: MUSMANNO, DONOHUE and COLVILLE,* JJ.

OPINION BY MUSMANNO, J.:

In this divorce action, John R. Goodemote ("Goodemote") appeals from the Order and Decree ruling that the increase in value of Goodemote's investment account ("the Investment Account"), funded via Goodemote's pre-marital deposits of his

5. I note tangentially that Justice Baer's dissent in *Wallace* disagreeing that the Commonwealth's appeal was properly before the Court, has some resonance for me, as I would agree that the issue preserved in the defendant's first appeal to the Superior Court in that case concerned both the manner (consecutive or concurrent) **and** length (total period of incarceration) of the sentence imposed,

and the Commonwealth did not file a petition for allowance of appeal from that judgment. Nevertheless, the rule in *Wallace* is broadly stated, controls the issue raised *sub judice*, and I would conclude, unlike the *per curiam* opinion, that *Wallace* requires reversal of the Superior Court's determination here.

* Retired Senior Judge assigned to the Superior Court.

federal veterans' disability benefits payments, is marital property subject to equitable distribution. We affirm.

The facts underlying this appeal are undisputed. Goodemote and Vickie J. Goodemote ("Vickie") were married on July 13, 1991. The parties permanently separated in October 2007 and divorced on March 28, 2011. Goodemote is a veteran who served in the Vietnam War. During his tour of duty, Goodemote suffered several injuries. Due to his injuries, Goodemote has received monthly 20% veterans' disability benefits payments (or "VA payments") continuously since his discharge in 1969.[1]

During Goodemote's first marriage, which ended in divorce in 1978, Goodemote opened the Investment Account, in his name alone, with Investors Diversified Services, Inc., which was later renamed Ameriprise Financial, Inc.[2] Beginning in 1971, Goodemote deposited his VA payments into the Investment Account. Goodemote permanently ceased depositing his VA payments into the Investment Account prior to the end of his first marriage in 1978. Thereafter, Goodemote deposited his VA payments into his personal checking account and used these funds for his living expenses. Significantly, Goodemote never withdrew any funds from the Investment Account nor did he ever use it for his support and maintenance.

As of the date of Goodemote's marriage to Vickie in 1991, the value of the Investment Account was $74,374.67. During the parties' marriage, the value of the Investment Account grew substantially due to re-investment of the interest and dividends earned by the account.[3] When the parties permanently separated in October 2007, the value of the Investment Account was $158,932.52. Accordingly, between the date of the parties' marriage and the date of their final separation, the Investment Account increased in value by $84,557.85.[4]

In November 2009, the trial court appointed a Master to address the issue of equitable distribution of the parties' marital property. Following a hearing, the Master prepared a report and an amended report detailing his findings and recommendation. Regarding Goodemote's premarital deposits of his VA payments into the Investment Account, the Master opined that "[a]lthough [the Investment A]ccount accrued during the course of the [parties'] marriage, the Master has determined that this account is not subject to equitable distribution pursuant to the Divorce Code and case law." Amended Master's Report, 10/14/10, at 17. The Master based this determination upon section 3501

---

1. Goodemote's VA payments were not his only form of income; rather, he was employed as a maintenance worker for approximately thirty-four years until his retirement in June 2006.

2. The Investment Account consisted of several investment portfolios including, *inter alia*, U.S. savings bonds, securities, mutual funds, and annuities.

3. Goodemote held the Investment Account solely in his name throughout the parties' marriage, and he did not deposit or withdraw any money from the account during this time.

4. Goodemote also had separate pre-marital funds, which were not derived from VA payments and not included in the Investment Account, invested in an annuity account with Prudential Financial, Inc. ("the Prudential Annuity"). At some point after the parties' final separation in October 2007, Goodemote commingled all of the funds then in the Prudential Annuity with the Investment Account. During the parties' marriage, the Prudential Annuity increased in value by $7,350.00. The parties do not dispute that this increase in value is marital property subject to equitable distribution.

of the Pennsylvania Divorce Code, which provides, in relevant part, as follows:

(a) **General rule.**—As used in this chapter, "marital property" means all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3).... However, marital property does not include:

(1) Property acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage.

* * *

(3) Property acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property.

* * *

(6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958 (Public Law 85–857, 72 Stat. 1229), as amended, except for those benefits received by a veteran where the veteran has waived a portion of his military retirement pay in order to receive veterans' compensation.

23 Pa.C.S.A. § 3501(a); *see also Carney v. Carney,* 449 Pa.Super. 179, 673 A.2d 367, 368 (1996) (stating that veterans' disability benefits are generally not marital property subject to equitable distribution). The Master also based this determination upon the relevant federal statute, 38 U.S.C.A. § 5301, which provides, in pertinent part, as follows:

§ 5301. **Nonassignability and exempt status of [veterans'] benefits**

(a)(1) Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C.A. § 5301(a)(1).

Vickie timely filed exceptions to the Master's Report asserting, *inter alia,* that the Master committed an error of law in determining that the increase in value of the Investment Account during the parties' marriage was not marital property subject to equitable distribution. In response, the trial court ruled that Goodemote had converted the VA payments in question into permanent investments by depositing and holding these funds in the Investment Account. The trial court thus held that these VA payments were not exempt from the definition of marital property under section 3501(a) of the Divorce Code and were not exempt under 38 U.S.C.A. § 5301(a)(1). Accordingly, on March 28, 2011, the trial court entered an Order and Decree in which it granted the parties' divorce, and ordered the following regarding equitable distribution:

6. [Goodemote] shall retain as his sole and separate property the portion of the [Investment] Account containing premarriage deposits of his veteran[s'] disability payments, which are non-marital property, and have a total value of $74,374.67.

* * *

10. The growth in the [ ] Investment [A]ccount on [Goodemote's] veteran[s'] disability benefits during the marriage was $84,557.85 (prior to the addition of the Prudential Annuity), and is marital property which shall be divided equally and [Vickie] is awarded $42,278.93. The balance of the [Investment A]ccount

shall be the sole and separate property of [Goodemote].

Order and Decree, 3/28/11, ¶¶ 6, 10. Goodemote timely filed a Notice of appeal from this Order and Decree.

On appeal, Goodemote raises the following issue for our review: "Did the [Trial] Court err in determining that [Goodemote's] service[-]related [veterans'] disability benefits had been converted to a marital asset subject to equitable distribution?" Brief for Appellant at 11.

 The issue of whether the increase in value of invested veterans' disability payments that accrued during a marriage is marital property subject to equitable division is a question of first impression in this Commonwealth. It is well settled that

[w]hether an asset is marital property or separate property for purposes of distribution of the marital estate[ ] is a matter reserved to the sound discretion of the trial court. An abuse of such discretion will be found to exist, however, if the trial court fails to follow proper legal procedures or misapplies the law.

*Carney,* 673 A.2d at 368 (citation omitted). Since the issue on appeal is purely a legal question, our scope of review is plenary and we review the trial court's legal determination *de novo. Smith v. Smith,* 595 Pa. 80, 938 A.2d 246, 253 (2007).

We will first address the United States Supreme Court's decision in *Porter v. Aetna Casualty & Surety Co.,* 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962), which the parties agree is controlling in this case. *See* Brief for Appellant at 14; Brief for Appellee at 7; *see also Drake v. Drake,* 555 Pa. 481, 725 A.2d 717, 723 (1999) (stating that the statutory language of 23 Pa. C.S.A. § 3501(a)(6), *supra,* conforms the Pennsylvania Divorce Code with federal statutes and United States Supreme Court

decisions, which taken together, hold that federal law governs the exemption of federal veterans' disability benefits). The *Porter* Court addressed whether veterans' disability payments retain their exempt status under 38 U.S.C.A. § 5301 (formerly codified at 38 U.S.C.A. § 3101), after being deposited in a federal savings and loan account. In *Porter,* the guardian of an incompetent veteran deposited a portion of the veteran's disability payments into a savings and loan account, and a creditor of the veteran thereafter sought to attach these funds to satisfy a judgment. *Porter,* 370 U.S. at 160, 82 S.Ct. 1231. Regarding the exemption in section 5301, the Supreme Court stated that "legislation of this type should be liberally construed to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof[.]" *Id.* at 162, 82 S.Ct. 1231 (internal citation omitted). The *Porter* Court further stated that

[t]he Congress, we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments.

*Id.* Applying this test, the *Porter* Court held that the veteran's disability payments deposited in the savings and loan account retained their exempt status under section 5301. *Id.* In so holding, the Court observed that the funds "were subject to immediate and certain access and thus plainly had 'the quality of moneys.'" *Id.* at 161–62, 82 S.Ct. 1231. The Court further determined that the veteran's disability payments had not been converted into permanent investments because (1) "they were not of a speculative character"; and

(2) "at times[, the veteran] drew moneys from the savings and loan fund for his support and maintenance requirements and [ ] no other funds whatever are now available to him, his disability payments having been cut off." *Id.* at 162, 82 S.Ct. 1231.

In the instant case, it is undisputed by the parties that Goodemote's VA payments in the Investment Account as of the date of the parties' marriage are non-marital property that is not subject to equitable distribution. At issue is whether the increase in value of the VA payments deposited in the Investment Account that accrued during the parties' marriage is marital property. Goodemote argues that he met all of the requirements of *Porter* and he did not convert the VA payments in question into permanent investments because these funds were subject to immediate and certain access in the Investment Account. Brief for Appellant at 15. According to Goodemote, since he "invested [the VA payments] in such a way that he could … have access [to] the funds[, w]hether or not he needed or used the funds during the [parties'] marriage is irrelevant." *Id.* at 16; *see also id.* at 14 (asserting that "the salient question[, *i.e.*, in the *Porter* test,] is whether the account is available to the veteran, not whether the veteran actually needed to use the account.").

As stated above, *Porter* established a three-part test for veterans' disability benefits payments to retain their exempt status; specifically, the funds must (1) be "readily available as needed for support and maintenance"; (2) "actually retain the qualities of moneys"; and (3) "*have not been converted into permanent investments.*" *Porter*, 370 U.S. at 162, 82 S.Ct. 1231 (emphasis added).

In the instant case, Goodemote failed to meet the third prong of the *Porter* test, as he had converted the VA payments he deposited in the Investment Account into permanent investments. In contrast to the veteran in *Porter*, Goodemote's VA payments are not his only means of support; rather, Goodemote was employed as a full-time maintenance worker for thirty-four years and he has received pension payments from his former employer since his retirement in June 2006. Indeed, Goodemote *never* withdrew any funds from the Investment Account, nor did he utilize the VA payments in this Account for his support and maintenance. At the equitable distribution hearing, Goodemote specifically referred to the Investment Account as his "retirement account." N.T., 5/10/10, at 19. Moreover, the Investment Account cannot be characterized as being "not of a speculative character." *Porter*, 370 U.S. at 162, 82 S.Ct. 1231. The Investment Account was not merely a savings account; rather, it was comprised of several investment portfolios that were subject to gains and losses, including securities, mutual funds, and annuities. Further, the value of the Investment Account increased greatly over the years from reinvestment of the account's earnings. Thus, we conclude that Goodemote's federal VA payments in question lost their exempt status when he converted these funds into permanent investments by holding them in the Investment Account. *See id.; see also Carrier v. Bryant*, 306 U.S. 545, 547, 59 S.Ct. 707, 83 L.Ed. 976 (1939) (holding that under the predecessor statute to 38 U.S.C.A. § 5301(a), veterans' disability benefits payments lost their exempt status when they were used to purchase negotiable notes and bonds held as investments).[5]

5. We note that courts in other states, when dividing property pursuant to a divorce, have held that under the *Porter* test and 38 U.S.C.A. § 5301(a), the exempt character of veterans'

We have also reviewed the other cases cited by Goodemote and determine that these cases are unavailing. The United States Supreme Court's ruling in *Lawrence v. Shaw*, 300 U.S. 245, 57 S.Ct. 443, 81 L.Ed. 623 (1937), undermines Goodemote's argument. The *Lawrence* Court held that bank deposits of veterans' disability benefits retained their exempt status so long as (1) the benefits remained subject to demand and use as the needs of the veteran for support and maintenance required, and (2) *the deposits did not assume the character of investments. Id.* at 250, 57 S.Ct. 443. Here, the VA payments that Goodemote deposited into the Investment Account were converted into permanent investments.

Likewise, Goodemote's reliance upon *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), is misplaced. In *Mansell*, the Supreme Court held that under the Uniformed Services Former Spouses' Protection Act ("FSPA"), 10 U.S.C.A. § 1408, military retirement pay that has been waived to receive veterans' disability benefits may not be treated as marital or community property divisible upon divorce.[6] *Mansell*, 490 U.S. at 594–95, 109 S.Ct. 2023. In the instant case, since none of Goodemote's VA payments were received in lieu of military retirement pay, neither *Mansell* nor the FSPA apply.

Based upon the foregoing, we conclude that the trial court did not err in determining that the increase in value of the Investment Account that accrued during the parties' marriage is marital property subject to equitable distribution. *See* 23 Pa.C.S.A. § 3501(a)(1) (including within the definition of marital property the increase in value of any non-marital property acquired prior to marriage); *see also Porter*, 370 U.S. at 162, 82 S.Ct. 1231. Therefore, pursuant to the Master's equitable distribution scheme, Vickie is entitled to a 50% portion of the $84,557.85 increase in value of the Investment Account that accrued during the parties' marriage. Accordingly, we affirm the Order and Decree of the trial court.

Order and Decree affirmed.

---

disability benefits does not extend to property purchased with the benefit funds. *See Gray v. Gray*, 922 P.2d 615, 619–20 (Okla.1996) (stating that once husband converted his veterans' disability benefits to personal property by purchasing two vans and a motor home, the exempt status of those funds was lost); *Bischoff v. Bischoff*, 987 S.W.2d 798, 800 (Ky.Ct. App.1998) (concluding that veterans' disability benefits lost their exempt status when invested in the parties' residence); *Pfeil v. Pfeil*, 115 Wis.2d 502, 341 N.W.2d 699, 702–03 (Wis.Ct.App.1983) (holding that a mortgage note and real property purchased with the veteran's disability payments were marital assets subject to equitable distribution, but the veteran's disability payments that he had deposited in his personal savings account retained their exempt status because they did not assume the character of permanent investments).

**6.** As explained in *Mansell*, "[i]n order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay." *Mansell*, 490 U.S. at 583, 109 S.Ct. 2023. Since, unlike military retirement pay, veterans' disability benefits are exempt from taxation and attachment under 38 U.S.C.A. § 5301(a)(1), the *Mansell* Court observed that "[n]ot surprisingly, waivers of retirement pay are common." *Mansell*, 490 U.S. at 584, 109 S.Ct. 2023.