**In the Matter of Karen COBB, Debtor.**

**John A. Casarow, Jr., Chapter 7 Trustee, Plaintiff,**

**v.**

**Franklin Chomenko and Anne Chomenko, Defendants.**

**Bankruptcy No. 97–16687/JHW. Adversary No. 98–1049.**

United States Bankruptcy Court, D. New Jersey.

March 3, 1999.

John A. Casarow, Jr., David F. Raczenbek, Casarow, Kienzle & Raczenbek, Bridgeton, New Jersey, for Chapter 7 trustee.

David A. Kasen, Kasen, Kasen & Braverman, Cherry Hill, New Jersey, for defendants.

## OPINION

JUDITH H. WIZMUR, Bankruptcy Judge.

We have before the court for resolution the adversary complaint filed by the Chapter 7 trustee seeking the return of monies paid pre-petition by the debtor to the defendants. The trustee asserts causes of action under sections 547, 548 and 550 of the Bankruptcy Code as well as under general principles of unjust enrichment.

## FACTS

The debtor, Karen Cobb, a/k/a Karen Chomenko, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 22, 1997. John A. Casarow, Jr. was appointed the Chapter 7 trustee for her estate. Defendants, Franklin and Anne Chomenko, are the parents of debtor's ex-husband, Frank Martin Chomenko.

This matter relates back to a loan made by the defendants to their son and to the debtor.[1] Approximately two years prior to their separation, Frank Chomenko arranged to borrow $40,000 from his parents to consolidate some of his and his wife's debts. His parents, the defendants herein, obtained an equity loan on their home and advanced the proceeds to their son and his wife, the debtor herein. Thereafter, debtor's husband Frank made payments from the couple's joint bank account on the equity loan for his parents for

---

1. The debtor denied that she agreed to pay back the loan to the defendants at the time the debt was incurred. For the reasons discussed below, I conclude that both the debtor and Frank Chomenko were liable to the defendants on the loan.

a period of time. The proceeds of the loan were used to pay off some of the debtor's debts, some of her husband's debts and some jointly held debt.

The debtor and her husband separated in February 1997. The debtor moved to Philadelphia, Pennsylvania, while her husband remained in the marital home.[2] The debtor and her husband reached an informal agreement on the issue of the equitable distribution of their assets, whereby the debtor agreed to withdraw $20,000 from her 401k plan to pay back to her in-laws. As consideration for the payment, debtor's husband agreed to waive any interest in the debtor's 401k plan, and agreed to waive any claims to the joint possessions he contended were removed by the debtor when the couple separated. According to the debtor, her husband also agreed to assume certain joint marital debts. The terms of this agreement were never reduced to writing.

In furtherance of this agreement, sometime during the first week in April 1997, debtor withdrew approximately $36,000 from her 401k plan. She deposited the net amount of $28,856.02, after taxes, into her checking account on April 7, 1997. One week later, she utilized the money to pay two joint marital debts of $4,000 and $2,567.08.

On April 25, 1997, the debtor sent a $20,000 check to her in-laws with a note explaining that the check was "to payoff the balance of the HFC loan/line you provided to your son, Frank M. Chomenko." Exhibit 5. That check was negotiated on or about April 30, 1997.

One week later, on May 7, 1997, debtor's husband filed an individual petition for relief under Chapter 7 of the Bankruptcy Code.[3] Upon learning that she would now be liable to pay the debts she had incurred jointly with her husband, which she had assumed he would be paying, debtor elected to file her own Chapter 7 petition on July 22, 1997. She listed her principal residence as the marital home, and scheduled her claim against the defendants for unjust enrichment as a contingent or unliquidated asset of the estate. The Chapter 7 trustee brought this action to recover the $20,000 payment to the defendants on March 23, 1998.

## DISCUSSION

The threshold question presented is whether the source of the funds for the prepetition repayment of debt by the debtor impacts upon the opportunity of the trustee to avoid the transfer. Citing to *In re Yuhas*, 104 F.3d 612 (3d Cir.), *cert. denied*, 521 U.S. 1105, 117 S.Ct. 2481, 138 L.Ed.2d 990 (1997), defendants correctly assert that the monies in the debtor's Thrift Savings Plan were excluded from property of the estate under 11 U.S.C. § 541(c)(2).[4] Since the monies paid to the defendants are traceable to the funds withdrawn from the debtor's Thrift Savings Plan, defendants contend that the trustee may not avoid a transfer of property that would not have otherwise been available to the bankruptcy estate.

Our focus is drawn to the proper characterization of the monies withdrawn pre-petition from the debtor's 401k plan and deposited into her personal checking account.[5] The question is whether those funds retain their exclusionary status or whether they become subject to inclusion in the debtor's estate upon their withdrawal and deposit into debtor's personal account.

A similar question was addressed by Judge Speer in *In re Bostic*, 171 B.R. 270 (Bankr. N.D.Ohio 1994). In *Bostic*, the Chapter 7 trustee sought to recover monies paid to a

---

2. Defendants' challenge to venue in this matter was dismissed at the October 6, 1998 hearing.

3. Frank Chomenko's petition was filed on May 7, 1997, case number 97–14362/JHW. He received a discharge on August 18, 1997, and his case was closed on August 25, 1997.

4. Section 541(c) provides in pertinent part:
   A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.
   11 U.S.C. § 541(c)(2).

5. There is no merit to the argument that because these funds were no longer in the debtor's account at the time of her petition, the funds could not be property of the estate. As the trustee has noted, actions to recover preferences and fraudulent transfers commonly involve property that was transferred pre-petition.

creditor from funds that the debtor had withdrawn from her ERISA qualified trust within sixty days of her petition. The defendant argued that since the debtor "transferred the money within the sixty (60) day window [under 26 U.S.C. § 402(a)(5)(C) ], those funds remain subject to the transfer restriction under ERISA's antialienation provisions and are not property of the estate." *Id.* at 273. Since the 60 day period had not expired when the debtor filed, "the money is still protected from Plaintiff, as if it still existed in the qualified trust". *Id.*

The court recognized the 60 day rollover window of protection, but found that there was no indication that the debtor intended to "rollover" the money into another protected antialienation fund. Rather, the court concluded that debtor's "sole purpose [was] fulfilling the obligation for an antecedent debt. . . . She elected not to protect them by rolling them over into another qualified fund, but to retain them and make a payment to a Creditor." *Id.* The same is true here.

Debtor withdrew the funds in question not to roll them over into another protected fund, but to make payments to her creditors. There was no statutory support protecting the funds from the debtor's creditors once she withdrew the money from her protected plan and deposited it into her personal checking account.

Defendants' reliance on the cases of *In re Ryzner,* 208 B.R. 568 (Bankr.M.D.Fla.1997); *In re Norris,* 203 B.R. 463 (Bankr.D.Nev. 1996); and *In re Frazier,* 116 B.R. 675 (Bankr.W.D.Wis.1990) is misplaced.[6] Each of those cases dealt with the question of whether or not exempt funds retain their exempt status after they are deposited into the debtor's account and/or are commingled with other assets. The courts each concluded that exempt assets retain their exempt status, even if commingled.

These cases are readily distinguishable from the instant case because we are not dealing with exempt funds which retain their exempt status under state law after they are received and deposited into a bank account. *See, e.g., In re Ryzner, supra,* 208 B.R. at 570. Instead, we are dealing with monies that have been withdrawn from an ERISA qualified plan and deposited into a checking account, following a deduction for taxes, and where there are no continuing protections afforded to the withdrawn funds. The fact that the money paid to the defendants came from an ERISA qualified plan does not prevent the trustee from seeking to avoid the pre-petition transfer in question.

■ We turn then to the trustee's complaint. In Count 1, the Chapter 7 trustee seeks to avoid the $20,000 payment to the defendants as a preferential transfer pursuant to 11 U.S.C. § 547. The trustee has the authority under the Bankruptcy Code to avoid a preferential transfer if the transfer in question satisfies the five elements under 11 U.S.C. § 547(b). Section 547(b) provides in pertinent part that:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> > (A) on or within 90 days before the date of the filing of the petition; or
> >
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

---

**6.** Defendants' citation to other case law is also inapposite. In *In re Sport Stations, Inc.,* 152 B.R. 335 (Bankr.M.D.Fla.1993) and *In re Underground Storage Tank Tech. Servs. Group, Inc.,* 212 B.R. 564 (Bankr.E.D.Mich.1997), the courts concluded that the debtor never held an interest in the transferred property. In *In re Hearing of Illinois, Inc.,* 110 B.R. 380 (Bankr.C.D.Ill.1990), the court authorized the avoidance of a pre-petition transfer to the IRS, pursuant to an IRS

levy, of an account receivable owed to the debtor, on the basis that the transfer caused the IRS to receive more than it would have received in a Chapter 7 liquidation. In *In re Freestate Mgmt. Servs., Inc.,* 153 B.R. 972 (Bankr.D.Md.1993), the "earmarking" doctrine was described, whereby a new lender binds the debtor to pay an old debt with the funds supplied. There is no new lender here.

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Defendants challenge elements one, two and five.

Based on the testimony presented, we conclude that the trustee has satisfied the first two elements. Although the debtor was somewhat equivocal about whether she actually undertook personal liability for the obligation, testifying that she was not involved in the borrowing process and did not agree to pay back her husband's parents, she acknowledged in later testimony that more than half of the proceeds of the loan were used to pay back her debts. In addition, she did not dispute the testimony of Frank Chomenko that the equity loan taken out by his parents was paid back for a period of time from Frank's and the debtor's joint checking account. Although debtor denied being present at the home equity loan closing, both Frank and defendant Anne Chomenko testified that she was there. The testimony is more consistent with the conclusion that both Frank Chomenko and the debtor undertook to repay his parents for the loan. On this record, I conclude that the defendants were "creditors" of the debtor,[7] that the payment of $20,000 constituted a transfer of debtor's interest in property to a creditor, and that the transfer was on account of an antecedent debt owed by the debtor before such transfer was made. The first two elements of § 547(b) have been established.

As to the third and fourth preference elements, defendants do not challenge the debtor's insolvency at the time of the transfer, which occurred within 90 days before the date of the filing of the petition. There is a presumption of insolvency for the 90–day period immediately preceding the filing of the bankruptcy petition. 11 U.S.C. § 547(f).

As to the fifth element, the trustee must prove that the creditor received more than they would have if the case were a Chapter 7 liquidation case, the transfer had not been made, and the creditor received payment of the debt to the extent provided by the provisions of the Code. If the debtor had not transferred the $20,000 to the defendants, that property would have been available for distribution to the other unsecured creditors. Otherwise, debtor's Chapter 7 case has no assets to distribute. Her interest in the former marital residence was abandoned by the trustee, and the mortgagee received relief from the stay. Debtor's personal property has been exempted. In addition to the claim of the Chomenkos, there are $35,788.89 in unsecured claims listed in the debtor's schedules. If the transfer to the Chomenkos had not been made, the Chomenkos would have received a pro rata share of the $20,000 available for distribution through the Chapter 7 estate. Instead, the Chomenkos received the full $20,000.

Defendants contend that the real transfer involved here was not the payment of $20,000 by the debtor to the defendants from her checking account, but rather the transfer from the debtor's Thrift Savings Plan to the defendants. There is no question that the debtor withdrew the funds from her Thrift Savings Plan with the specific intent to pay back the defendants, and if she had not withdrawn the funds, her other creditors would not have been able to access the funds. Therefore, contend the defendants, there is no actual diminution of the value of the Chapter 7 estate to the creditors, and the brief pass-through of the funds through debtor's checking account "on the way to pay Mr. and Mrs. Chomenko" should not be avoided to create a windfall for the creditors and the bankruptcy estate.

Defendants are certainly correct that "[t]he fundamental inquiry [to determine whether a transfer is preferential] is whether the transfer diminished or depleted the debtor's estate." 5 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 547.03[2] at 547–21 (15th

---

**7.** Under 11 U.S.C. § 101(10), "creditor" means an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

Ed.Rev.1998). The problem with defendants' analysis is that it asks us to ignore the impact of debtor's act to withdraw the funds and to deposit the money in her checking account. At that point, the funds were no longer protected by the antialienation provisions of the Thrift Savings Plan, and became vulnerable to creditors' claims. Debtor chose to favor one set of creditors, the defendants, over her other creditors who were not paid. That debtor believed the other joint debts would be paid by her husband has no impact. The debtor's intent or motive is not material on the preference issue. COLLIER, ¶ 547.01 at 547–10. At the point of transfer, on April 30, 1997, defendants received more than they would have through the debtor's Chapter 7 case if the transfer had not been made.

I conclude that the trustee has met his burden to avoid the preference payment made by the debtor to the defendants in the amount of $20,000. I need not take up the other counts of the complaint.

As part of Count 1, the Chapter 7 trustee also seeks an award of prejudgment interest as well as attorneys' fees and costs. There does not appear to be any statutory support for the award of attorneys' fees and costs, and the trustee has not provided any authority for the addition of prejudgment interest. The trustee's request is denied, without prejudice to the opportunity of the trustee to support his quest for interest, if it is submitted by March 22, 1999.

Counsel for the trustee will prepare an order in conformance with the above opinion.