NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

19-P-109                                           Appeals Court

KATHY STACY  vs.  BARRY STACY.

No. 19-P-109.

Worcester.      November 4, 2019.  -  March 13, 2020.

Present:  Green, C.J., McDonough, & Englander, JJ.

Federal Preemption. Veteran. Constitutional Law, Federal
    preemption, Veteran. Jurisdiction, Federal preemption.
    Statute, Federal preemption. Divorce and Separation,
    Division of property.

Complaint for divorce filed in the Worcester Division of
the Probate and Family Court Department on June 2, 2017.

The case was heard by Kathryn M. Bailey, J.

Anne E. Grenier for the husband.
Saman S. Wilcox for the wife.

ENGLANDER, J.  This case presents the question whether

Federal law preempts a Massachusetts judge from dividing a

spouse's Federal veterans' disability benefits as part of the

marital estate, in connection with the equitable distribution of

the estate upon divorce under G. L. c. 208, § 34.  Barry Stacy

(husband) appeals from an amended divorce judgment that awarded Kathy Stacy (wife) one-half of his personal bank account containing a retroactive, lump sum veterans' disability payment he had received from the United States Department of Veterans Affairs (VA) during the marriage.  The husband contends, and we agree, that the award to the wife is preempted by Federal law governing veterans' disability payments.  See 38 U.S.C. § 5301(a)(1) (2012).  We accordingly vacate the portion of the amended divorce judgment pertaining to property division, and remand the matter for further proceedings.

Background.  We summarize the relevant facts found by the judge, supplementing them with undisputed evidence in the record.  See Pierce v. Pierce, 455 Mass. 286, 288 (2009).  The parties began living together in 1976, and were married in 1982. No children were born of the marriage; however, both parties have children from prior marriages.  Prior to the marriage, the husband was on active duty in the United States Navy from 1960 to 1964, during which time he suffered a facial fracture in his sinus region.  The husband filed a disability claim with the VA in 1981.[1]  The VA eventually deemed the husband ten percent disabled in 2004, and he began receiving VA disability benefits of $130 per month.  While it appears that the husband's VA

---

[1] Among the husband's complaints were sleep apnea, chronic sinus infections, and headaches.

disability payments were initially deposited in the parties'
joint bank account, all payments from July 2014 onward were
deposited in the husband's personal bank account at Millbury
Credit Union (MCU).

In July 2015, the VA changed the husband's status to thirty
percent disabled with one dependent (i.e., the wife),
retroactive to 2004. In July 2016, the husband received a lump
sum payment from the VA of $119,403.96, representing his
retroactive VA disability benefits, which was deposited in his
personal MCU account. In August 2017, the husband received a
second lump sum payment from the VA of $12,792.62, representing
the retroactive additional spousal benefit, which was also
deposited in his personal MCU account.[2]

The wife initiated divorce proceedings in June 2017, and a
trial was held in March 2018. The judge found that the VA
disability funds deposited in the husband's personal MCU account
were marital property subject to equitable distribution under
G. L. c. 208, § 34, and ordered those funds divided equally

---

[2] As discussed infra, this additional statutory benefit is
paid to the veteran because he has a dependent. The veteran is
the beneficiary and payee, and the spouse has no claim to it.
Sharp v. Nicholson, 403 F.3d 1324, 1326-1327 (Fed. Cir. 2005).

between the parties.   The present appeal by the husband

followed.[3]

    _Discussion_.   We begin with what this case is not about.   We

deal here solely with veterans' disability benefits.   We are not

addressing any other type of benefit payable under Federal law,

as to which Congress may have directed a different result.   Nor

are we addressing the ability of State courts to order veterans'

disability benefits used to satisfy child support obligations;

the United States Supreme Court has previously ruled that State

courts may access veterans' disability payments in child support

enforcement proceedings.   _Rose_ v. _Rose_, 481 U.S. 619, 634

(1987).

    Instead, the question before us is whether Federal law

preempts Massachusetts courts from dividing veterans' disability

benefits as part of the marital estate upon divorce.   To answer

this question we must examine the State law at issue and the

applicable Federal law, and then determine whether they are in

conflict under the preemption standards established by the

---

[3] The husband raised the Federal preemption issue before the
trial judge in a postjudgment motion.   Although we may decline
to consider an issue raised for the first time after trial, see
R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass.
66, 73 (2001), here we think it appropriate to address the
issue.   The parties addressed the preemption issue in briefing
in the trial court and in this court, and the wife has not
claimed waiver or objected to this court's consideration of the
issue.

United States Supreme Court.  See Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979).  We review questions of Federal preemption de novo.  See Hitachi High Techs. Am., Inc. v. Bowler, 455 Mass. 261, 263 (2009).

Beginning with the Massachusetts law, there is no question the husband's bank account at issue ordinarily would be part of the marital estate:  "General Laws c. 208, § 34, empowers the courts to deal broadly with property and its equitable division incident to a divorce proceeding."  Rice v. Rice, 372 Mass. 398, 401 (1977).  See G. L. c. 208, § 34.  To that end, a judge "may assign to either [spouse] all or any part of the estate of the other," including any "separate nonmarital property," because "[a] party's 'estate' by definition includes all property to which he holds title, however acquired."  Rice, supra at 400, 401, quoting G. L. c. 208, § 34.[4]  The husband's MCU account thus was part of the marital estate, unless Federal law prohibits that result.

As to the applicable Federal law, the bases and procedures for the payment of veterans' disability benefits are set forth

---

[4] "Upon divorce . . . the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits, military retirement benefits if qualified under and to the extent provided by federal law, pension, profit-sharing, annuity, deferred compensation and insurance."  G. L. c. 208, § 34.

in title 38 of the United States Code. Veterans who suffer from a disability stemming from active military duty are entitled to receive such benefits, with the amount of compensation determined by the severity of the disability. See 38 U.S.C. § 1114 (2012) (rates of wartime disability compensation); 38 U.S.C. § 1134 (2012) (rates of peacetime disability compensation). As noted, the husband has been receiving such benefits since 2004, and has deposited them in a separate account, in his own name, since 2014.

Since at least the 1870s the payments made to disabled veterans have been protected by a so-called anti-attachment statute, the current version being 38 U.S.C. § 5301(a)(1). See Act of Congress March 3, 1873, Rev. St. § 4747; United States v. Hall, 98 U.S. 343, 349-355 (1878). Section 5301(a)(1) provides, in relevant part:

> "Payments of benefits due or to become due under any law administered by the Secretary [of Veterans Affairs] shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary" (emphasis added).

As is evident from its language, the general purpose of § 5301(a)(1) is to ensure that veterans' disability benefits actually reach their intended beneficiaries. See Hall, supra at 349-351. Notably, similar anti-attachment provisions protect

other types of Federal benefits.  See, e.g., 42 U.S.C. § 407(a) (2012) (protecting Social Security benefits).

The question whether a particular Federal benefit may be divided upon divorce is not novel.  Indeed, the United States Supreme Court has addressed related issues on many occasions. Thus, in Hisquierdo, the Court ruled that a railroad retirement benefit payable pursuant to Federal law, which the husband expected to receive postdivorce, could not be divided as part of his California divorce proceeding.  439 U.S. at 582-585.  Other Supreme Court opinions have addressed preemption issues in connection with, for example, military retirement pay, see McCarty v. McCarty, 453 U.S. 210 (1981) (Federal law preempts State courts from dividing military retirement pay), and the National Service Life Insurance Act, see Wissner v. Wissner, 338 U.S. 655 (1950) (anti-attachment provision prohibited State court from assigning life insurance proceeds to nonbeneficiary widow).  See also Mahoney v. Mahoney, 425 Mass. 441, 443-445 (1997) (Social Security benefits may not be divided upon divorce).

Although there is a considerable body of law in this area, the Supreme Court has never specifically addressed whether Federal law preempts State courts from dividing veterans' disability benefits as part of a marital estate.  Under the cases, the basic preemption analysis is well settled.  "The

whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." In re Burrus, 136 U.S. 586, 593-594 (1890). Accordingly, "'[o]n the rare occasion when state family law has come into conflict with a federal statute, [the United States Supreme Court] has limited review under the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be pre-empted.'. . . Before a state law governing domestic relations will be overridden, it 'must do "major damage" to "clear and substantial" federal interests.'" Rose, 481 U.S. at 625, quoting Hisquierdo, 439 U.S. at 581. As the Supreme Court pointed out in Hisquierdo, however, despite the high bar for preemption the Court has several times concluded that State domestic relations laws are preempted in the context presented here -- where States have applied their domestic relations laws to order Federal benefits redistributed to former spouses upon divorce.

And indeed, we find Hisquierdo controlling on the preemption issue here. As noted, the question in Hisquierdo was whether retirement benefits payable to a railroad worker under the Railroad Retirement Act could be divided by California as community property upon divorce. The Supreme Court held that such a division was preempted, relying primarily upon the

Railroad Retirement Act's anti-attachment statute, which contained language very similar to the language of § 5301. That anti-attachment provision stated: "notwithstanding any . . . law . . . of any State, . . . no [railroad retirement] annuity . . . shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated." 45 U.S.C. § 231m(a) (2012). The Hisquierdo Court ruled that this language expressed a strong Federal policy that State laws not operate to "diminish" "the benefit Congress has said should go to the retired worker alone." 439 U.S. at 590. Moreover, in so ruling the Court squarely rejected an argument that the language of the anti-attachment statute should be read more narrowly, as merely a restatement of "the Government's sovereign immunity from burdensome garnishment suits":

> "We, however, cannot so lightly discard the settled view that anti-assignment statutes have substantive meaning. Section 231m goes far beyond garnishment. It states that the annuity shall not be subject to any 'legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated.' Its terms makes no exception for a spouse."

Id. at 586.

Notably, the Hisquierdo Court took pains to distinguish a former spouse's claim for marital property, from a former spouse's claim for ongoing support. 439 U.S. at 586-587. In 1975, just a few years before Hisquierdo was decided, Congress

had enacted legislation that provided a limited override of some anti-attachment statutes, so as to permit certain Federal benefits to be used to satisfy child support and alimony obligations. The Hisquierdo Court noted that the legislation preserving child support and alimony claims did not also preserve community property claims: "It is therefore logical to conclude that Congress, in adopting § 462(c), thought that a family's need for support could justify garnishment . . . , but that community property claims, which are not based on need, could not do so." Id. at 587.[5]

Hisquierdo was followed and extended in McCarty, 453 U.S. 232-235, where the Court held that a wife's claim to her husband's military retirement benefits in a State divorce action was also preempted. McCarty did not even involve an anti-attachment statute, yet the Court still concluded that State community property laws conflicted with, and were preempted by,

---

[5] The 1975 legislation did not provide for veterans' disability benefits to be accessed for support purposes. Accordingly, that issue was left for later resolution, and it reached the Supreme Court in Rose, discussed infra. The distinction in the 1975 legislation between State laws governing support obligations and those governing the division of marital property, however, supports our analysis herein.

an overriding Federal interest that military retirement pay go to the military veteran.[6]

Applying the above case law to our case, we conclude that Federal law preempts Massachusetts courts from treating veteran's disability payments as marital property subject to equitable distribution. The Federal anti-attachment statute prohibits "attachment, levy, or seizure" by "any legal or equitable process whatsoever." 38 U.S.C. § 5301(a)(1). An order requiring the division of veterans' benefits is certainly "legal or equitable process." We suppose it would be possible to read the words "attachment, levy, or seizure" narrowly, such that the statute merely prohibits court orders directed at the property itself (in rem), and does not prohibit orders, such as the order at issue, that operate on the person holding the property (in personam). As discussed above, however, the Hisquierdo Court rejected such a narrow construction. 439 U.S. at 586. Nor do we think such a narrow construction would be consistent with the statute's evident purpose.

The wife relies upon the Supreme Court's decision in Rose, where the Court concluded that the anti-attachment provision "does not extend to protect a veteran's disability benefits from

---

[6] At times, Congress has stepped in directly. Thus, Congress acted to dictate a different result than in McCarty, in 1982. See 10 U.S.C § 1408 (2017).

seizure where the veteran invokes that provision to avoid an otherwise valid order of child support." Rose, 481 U.S. at 634. But while the Rose Court did reason that VA disability "benefits are intended to support not only the veteran, but the veteran's family as well," the holding in Rose was confined to State court child support enforcement proceedings, and did not involve property division. Id. And as discussed above, the case law, including Hisquierdo and Wissner, has historically distinguished between State property division laws and State support laws, holding that preemption applied to the former but not necessarily to the latter. See, e.g., Hisquierdo, 439 U.S. at 586-587; Wissner, 338 U.S. at 659-660. We cannot read Rose as overriding Hisquierdo and other cases holding that anti-attachment provisions preempt State marital property division laws.

Our conclusion that § 5301 preempts State marital property division laws is further supported by those sections of title 38 that allocate additional compensation for the support of a disabled veteran's spouse, but expressly provide that the additional compensation is an entitlement of the veteran, rather than the veteran's spouse. See 38 U.S.C. § 1115 (2012) ("Any veteran entitled to compensation . . . whose disability is rated not less than 30 percent, shall be entitled to additional compensation for dependents"); 38 U.S.C. § 1135 (2012) (same).

Moreover, as was the case in Hisquierdo,[7] the spousal benefit terminates upon divorce. See 38 U.S.C. § 5112(b)(2) (2012). These sections indicate that the additional compensation to the veteran for the veteran's dependents is an entitlement of the veteran, not the veteran's spouse. Sharp, 403 F.3d at 1326.

Our conclusion also is in accord with the vast majority of State courts that have addressed the issue, both before and after the decision in Rose. See, e.g., Marriage of Wojcik, 362 Ill. App. 3d 144, 159 (2005) (§ 5301 reflects Congress's intent to exempt VA disability benefits from any legal process, thus "VA benefits may not be divided directly or used as a basis for an offset during state [divorce] proceedings"); Marriage of Howell, 434 N.W.2d 629, 633 (Iowa 1989) (VA disability benefits "are statutorily exempt from all claims other than claims of the United States, and are not divisible or assignable" in divorce actions); Marriage of Strong, 300 Mont. 331, 339 (2000); Pfeil v. Pfeil, 115 Wis. 2d 502, 505-506 (1983).[8]

---

[7] While in the Railroad Retirement Act Congress "provid[ed] a benefit for a spouse," Congress "purposefully abandoned" the spousal benefit "in allocating benefits upon absolute divorce." Hisquierdo, 439 U.S. at 584. The Hisquierdo Court explained: "In direct language the spouse is cut off: 'The entitlement of a spouse of an individual to an annuity . . . shall end on the last day of the month preceding the month in which . . . the spouse and the individual are absolutely divorced.'" Id. at 584-585, quoting 45 U.S.C. § 231d(c)(3).

[8] At least one State court has ruled that there is no Federal law precluding the division of veterans' disability

There is one final issue that requires our attention, which is whether the anti-attachment provision protects veterans' disability benefits, such as those at issue, that were received prior to the divorce.  The wife argues that the disability benefits paid to the husband during the marriage (as distinguished from future disability payments) were properly included in the marital estate.  Section 5301(a)(1), however, by its plain terms applies to "[p]ayments of benefits . . . made," "either before or after receipt by the beneficiary" (emphasis added), so it is clear that benefits do not lose their protection from State court process solely because they had already been paid out.  There is a practical issue, however, in that disability payments received before divorce may lose their separate character when they are comingled with the marital assets.  The question here is whether the payments deposited into the husband's personal bank account from July 2014 onward are sufficiently separate that they are protected by the anti-attachment law.

The United States Supreme Court's decision in Porter v. Aetna Cas. & Sur. Co., 370 U.S. 159 (1962), controls here.  In Porter, the Court held that veterans' disability payments deposited in a bank account remain exempt from attachment under

_____

benefits upon divorce.  See Marriage of Landis, 200 Or. App. 107, 111-112 (2005).

38 U.S.C. § 3101 (the statutory predecessor to § 5301), "provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments." 370 U.S. at 162. Here, the veteran's disability payments in question were deposited in the husband's individual, interest-bearing bank account, remained "readily available" to him, "retain[ed] the qualities of moneys," and were not "converted into permanent investments." Id. See Younger v. Mitchell, 245 Kan. 204, 211 (1989) (VA disability benefits deposited in bank account remained exempt from attachment under § 3101, and "fact that interest was credited to the . . . account [did] not destroy the statutory exemption"). Cf. Bischoff v. Bischoff, 987 S.W.2d 798 (Ky. Ct. App. 1999) (husband's VA disability benefits lost exempt status under § 5301[a] once they were invested in real property); Goodemote v. Goodemote, 44 A.3d 74, 78 (Pa. Super. Ct. 2012) (VA disability payments lost exempt status under § 5301 once "converted . . . into permanent investments"). We therefore hold that the VA disability funds in the husband's personal MCU account were exempt from division by virtue of § 5301(a)(1), and it was error to include them in the marital estate for purposes of equitable distribution. Accordingly, the portions of the amended divorce judgment

pertaining to property division must be vacated, and the case must be remanded for a redistribution of the marital estate pursuant to G. L. c. 208, § 34.

We touch upon some issues that may arise on remand. Because § 5301(a)(1) preempts the judge's authority to assign the veterans' disability funds in question, those funds must be excluded from the redistribution of the marital estate. That said, however, we do not read § 5301 to prohibit the judge from considering the husband's receipt of VA disability benefits as a relevant factor when determining how to divide the marital estate. Rather, the judge may equitably divide the redefined estate in light of all the factors enumerated in G. L. c. 208, § 34. Cf. Mahoney, 425 Mass. at 446 (although anti-assignment statute bars equitable distribution of Social Security benefits, "a judge may consider a spouse's anticipated Social Security benefits as one factor, among others, in making an equitable distribution of the distributable marital assets"). The language of § 5301 reflects Congress's intent to preempt a State court judge's authority to assign or divide VA disability benefits. The statute should not be read, however, to preclude a judge from "acknowledging the existence" of those benefits when determining an equitable distribution of the parties' other

assets. <u>Wojcik</u>, 362 Ill. App. 3d at 161.[9] Such a conclusion would run counter to the preemption standards in the case law, which require a conflict with "the express terms of federal law." <u>Hisquierdo</u>, 437 U.S. at 583.

<u>Conclusion</u>. So much of the amended divorce judgment dated September 24, 2018, as pertains to property division is vacated, and the matter is remanded for further proceedings consistent with this opinion.

<u>So ordered</u>.

---

[9] Although the judge may consider the receipt of the benefit as a factor in the § 34 assessment, the judge may not mechanically offset the distributions dollar for dollar to account for the veterans' disability award. Such would constitute an improper end run around the anti-attachment statute. <u>Cf</u>. <u>Hisquierdo</u>, 490 U.S. at 588 (court may not offset future railroad retirement benefits).